Argued August 28, affirmed October 16, 1978

STATE OF OREGON, *Plaintiff-Appellant,*
*v.*
LINDA ANNETTE KITTREDGE,
*Defendant-Respondent.*
(No. 22664, CA 10662)

STATE OF OREGON, *Plaintiff-Appellant,*
*v.*
STEVE LESLIE ANDERSON, *Defendant-Respondent.*
(No. 22665, CA 10662)
585 P2d 423

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for respondents. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

Pursuant to ORS 138.060(3),[1] the state appeals from pretrial orders in companion cases suppressing evidence seized pursuant to a warrant.

The affidavit in support of the warrant is set out in the margin.[2] We agree with the trial court that the peculiar facts set out in the affidavit were "stale".

---

[1] ORS 138.060(3) reads:

"The state may take an appeal from the circuit court or the district court to the Court of Appeals from:

"* * * * *

"(3) An order made prior to trial suppressing evidence; * * *."

[2] "I, David Meier, being first duly sworn, on oath depose and say: That I am a police officer for the City of Bend, Oregon, and have been so employed for the past seven years; That on the 10th day of November, 1977, I was personally informed by an individual known personal by me to be a Confidential Reliable Informant (CRI) of certain drug activity within the City of Bend, Oregon, namely *that within the past 96 hours,* the CRI was personally within a residence located at 507 N.E. Quimby, more specifically described as a single story white wooden frame residence located on the southeast corner of N.E. 5th and Quimby, Bend, and having the number 507 displayed near the front door which faces N.E. 5th. That while in the residence the CRI personally observed the narcotic drug, marijuana. I know the CRI to be a reliable informant because within the last two months the said informant told me about a residence where a specific narcotic drug, marijuana, could be purchased and obtained. Prior to the informant going to that location, I searched the informant and found the informant not to possess any dangerous or narcotic drug. I then personally observed the informant, from the time I searched the informant, continuously and without interruption and observed the informant enter the residence in which the informant told me narcotic drugs could be obtained; the informant remained in the house for a period of time less than one-half hour during which time I continuously maintained a surveillance of the residence and then observed the informant emerge from said building and proceed to a location predetermined and agreed upon by the informant. I then searched the informant and found the informant to possess marijuana. I knew this to be marijuana from many prior police training experiences and marijuana related arrests I have made. I believe that the informant knows what marijuana is and looks like from the informant's admitted prior use of marijuana; from my prior contacts with the informant when the informant was in possession of marijuana, and from the incident recited above when the informant returned with marijuana

The only operative facts recited in the affidavit supporting issuance of the warrant are that (1) a confidential reliable informant was in certain premises "within the past 96 hours" and that (2) while there he observed marijuana.

The following facts, among others, are *not* made known: (1) *How much* marijuana was seen. The amount could have been as little as less than an ounce or more than a ton. The amount observed is significant because it affects the likelihood that some marijuana will be found there later. If only a single marijuana cigarette was observed, it was probably gone 96 hours later. If large quantities were observed, there would exist at least a permissible inference that some remained or that the premises were being used as a market for the sale of marijuana. *See State v. Spicer,* 254 Or 68, 456 P2d 965 (1969).

(2) *In whose possession* the marijuana was seen. The affidavit tells us nothing about who normally occupies the house, or about who actually had the marijuana. Possession of contraband by one who lives in a place, as opposed to possession by one who is merely a visitor on the premises, gives rise to a stronger inference that the drug is still there at a later time. *Compare State v. Ingram,* 251 Or 324, 445 P2d 503 (1968) (affidavit failed to allege suspect resided at suspected premises at time drugs observed) *with State v. Black/Black,* 36 Or App 613, 585 P2d 44 (1978) (affidavit showed suspect had long history of drug activity and resided at suspected premises). *See also State v. Scheidemann,* 252 Or 70, 448 P2d 358 (1968).

---

after the informant made the buy described above, and based on the above, the affiant has reason to believe and does believe that the crime of Criminal Activity in Drugs has been committed and prays the above entitled Court to issue a Search Warrant to examine the person and/or premises above described, and search for the above mentioned and described property, and any other mean, fruits, instrumentalities, and evidence of said crime and to seize the aforesaid objects of the search." (Emphasis added.)

(3) *Prior history* of suspects. The affidavit contains no identification of any resident, much less providing any history of the occupant or frequenters of the premises which would permit an inference that there will continue to be drugs there. *See State v. Black/ Black, supra.*

While a further detailing of any of the above items might have tipped the scales, we hold that this affidavit was insufficient to establish probable cause. We acknowledge and affirm the obligation to give affidavits a "common sense reading," and to encourage officers to seek warrants. *See State v. Ingram, supra.* We also recognize that the phrase "within the past 96 hours" might well have been a euphemism required to hide the identity of a confidential reliable informant whose identity might be disclosed by a more precise time frame. However, we can give this fact no separate weight in construing the affidavit. The affidavit, as it stands, is insufficient to justify the state's invasion of private premises.

The judgment of the trial court is affirmed.