Argued and submitted February 18, affirmed April 20,
reconsideration denied June 4,
petition for review denied June 23, 1981 (291 Or 151)

## STATE OF OREGON,
*Respondent,*

*v.*

## RODNEY LEROY SMITH,
*Appellant.*

(No. 80-869, CA 19056)

627 P2d 26

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant seeks reversal of his conviction for Manufacture of a Controlled Substance. The sole issue on appeal is whether the trial court erred in denying the defendant's motion to suppress evidence seized pursuant to a search warrant. Defendant contends that the affidavit in support of the search warrant was insufficient to establish probable cause. We affirm.

The relevant facts recited in the affidavit supporting issuance of the warrant are that:

"* * * within the past twenty-four hours I was contacted by a confidential reliable informant I shall hereafter refer to as #106-1. #106-1 has provided information concerning narcotic activity of persons within the community, to both myself and Detective Walsh of the North Bend Police Department, which we know to be factual information. This same confidential reliable informant, #106-1, has further related that he, too, is very familiar with marijuana, and has smoked this substance and observed the cultivation, manicuring, manufacturing and packaging of cannabis on several thousand occasions. This same confidential reliable informant further related to me that two males, a Michael Webb, also known as 'Pheno' on the streets, as he is partial to the drug phenobarbital, a depressant to the central nervous system, and another male known as Rod LeRoy Smith, reside at 1086 W. Commercial Street, Coos Bay, Oregon, and that these two males sell large quantities of marijuana to buyers within the community, and that these subjects, Smith and Webb, are known to sell marijuana to minors in the neighborhood.

"#106-1 also indicated that subject Smith is married to a female known as Vicky, who also resides at the house located at 1086 W. Commercial Street, Coos Bay. #106-1 also indicated that weapons, particularly handguns, are kept within the house. This confidential reliable informant, #106-1, indicated to me that Rod Smith is presently cultivating some very high quality 'flowering tops' in an upstairs bedroom closet at 1086 W. Commercial Street, and that elaborate grow lights are utilized in the cultivation of these plants and that the confidential reliable informant, #106-1, has personally observed these 'flowering tops' growing in the closet, and recognizes them to be a high quality form of marijuana. I personally know that 'flowering tops' are synonymous with a high quality form of

marijuana, commonly known as 'sinsemilla,' the sweet, unpollinated flowers of the female hemp plant.

"I personally checked with Pacific Power and Light Company in Coos Bay and learned that the power at 1086 W. Commercial is listed under the name of Rod LeRoy Smith, and his wife Vicky.

"I also personally checked the files of the Coos Bay Police Department and learned upon review of the State of Oregon Dealers' Record of Sale of Revolver or Pistol that on March 4, 1978, Mr. Michael William Webb had purchased a .32 caliber Bernadelli pistol."

In *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), the Supreme Court established a basis for determining whether an affidavit based upon hearsay, as in the case before us, is sufficient to establish probable cause to issue a search warrant. An affidavit (1) must set forth the informant's basis of knowledge, and (2) it must set forth facts showing the informant's veracity, either by showing (a) that the informant is credible, or (b) that his information is reliable. *State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980); *State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* (1980); *State v. Henderson,* 40 Or App 27, 594 P2d 419 (1979); *State v. Diaz,* 29 Or App 523, 564 P2d 1066 (1977).

The first part of the *Aguilar/Spinelli* test is easily met in this case: the informant personally observed the marijuana. We turn to the veracity prong of the analysis.

■　　　Veracity of an informant is most often demonstrated by showing that the anonymous informant has provided information in the past which has proven reliable and accurate and has led to arrests and convictions.[1] *See McCray v. Illinois,* 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967). In this case, the affidavit states that the informant has supplied the affiant and another detective with information concerning narcotic activity of persons within the community which they knew to be "factual."

Giving this information a "common sense reading," *United States v. Ventresca,* 380 US 102, 108-109, 85 S Ct

---

[1] 1 La Fave, Search and Seizure, § 3.3, p 509 (1978).

741, 13 L Ed 2d 684 (1965), we think it shows that the informant has provided information in the past, that the information has concerned drug activity, and that the information has proved to be "factual," *i.e.,* reliable. Save for any specific statement as to *how often* such information was supplied, this allegation compares favorably to that found sufficient in *State v. Henderson,* 40 Or App 27, 29, 594 P2d 419 (1979) (informant "has given drug information on at least ten occasions, which information has proven to be accurate and reliable each time"); *see also, State v. Delker,* 26 Or App 497, 500, 522 P2d 1313 (1976) (informant had provided reliable information "on at least" four prior occasions). However, we think the same "common sense" reading of the phrase,

"* * * has provided information concerning narcotic activity of *persons* within the community, to *both* myself and Detective Walsh * * * which we know to be factual information." (Emphasis supplied.)

indicates that it is more probable than not that the informant has supplied reliable information on more than one occasion. We conclude that the veracity prong of the *Aguilar/Spinelli* test has also been met.

■    Defendant further contends that the affidavit in this case presents a *Kittredge - McGee* problem. *See State v. Kittredge/Anderson,* 36 Or App 603, 585 P2d 423 (1978); *State v. McGee,* 45 Or App 13, 607 P2d 217 (1980). In those cases we held that affidavits which stated that, within the past 96 hours and 48 hours, respectively, the informant saw a "quantity" of marijuana, were insufficient to establish probable cause. Our decisions were based on the fact that, without knowing how much marijuana had been seen and without any demonstration in the affidavit of some connection to an on-going drug business, there was no way of knowing whether the marijuana would be found at the place in question at a later date. *See also, State v. Scheer,* 49 Or App 937, 620 P2d 973 (1980). In this case the informant saw marijuana plants growing in the defendant's house. He does not reveal how many plants but obviously more than one. The affidavit states that the informant "presently" saw the plants being cultivated and that he relayed this information to the police within the previous 24 hours. We take this to mean that he saw the plants shortly before he

spoke with the police. *See State v. Lindenburger,* 35 Or App 623, 582 P2d 42, *rev den* 284 Or 80 (1978). Given the facts as presented in the affidavit before us, it is reasonable to infer that the plants would still be found at the defendant's home at a later date. Actual plants are clearly different from a quantity of marijuana.

Affirmed.