Argued and submitted April 30, reversed and remanded for trial, respondents' reconsiderations denied October 27, petitions for review denied November 30, 1982 (294 Or 149)

STATE OF OREGON,
*Appellant,*

*v.*

FREDERICK CARSON KOPPENHAFER,
*Respondent.*

(81-353; CA A22876)

STATE OF OREGON,
*Appellant,*

*v.*

GEORGE S. CASTAGNOLA,
*Respondent.*

(81-354; CA A22877)
(Cases Consolidated.)

650 P2d 981

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Lawrence B. Hunt, Portland, argued the cause for respondent Frederick Carson Koppenhafer. With him on the brief was Becker, Sipprell & Hunt, Portland.

S. Lynn Parkinson, Oregon City, argued the cause for respondent George S. Castagnola. With him on the brief was Parkinson, Fontana, Schumann, Jones & Ellis, Oregon City.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In these consolidated cases, the state appeals an order suppressing evidence seized pursuant to a search warrant. The issue is whether the affidavit was sufficient to support the issuance of the warrant. Because we conclude that the affidavit was sufficient, we reverse.

The relevant portions of the affidavit state:

"That on 4/10/81, I was in contact with a confidential and reliable informant who in the past has furnished to myself and other members of the said Narcotics Detail a considerable amount of information regarding the illicit trafficking of narcotics and dangerous drugs in the Portland Metropolitan area;

"That I believe this informant to be reliable because information given by this informant regarding the illicit trafficking of narcotics and dangerous drugs in the Metro-Portland area was checked and found to be true and accurate in every respect. That the informant has in the past, on two separate occasions, purchased without pre-scription for myself, at my direction, a quantity of what was purported to be both Ritalin and Marijuana. When these substances were caused to be analyzed by myself, the results of these analyses discovered that these substances were in fact Ritalin and Marijuana, narcotic drugs and controlled substances. These purchases occurred within the last 60 days.

"That on 4/10/81, my informant informed me that within the last 48 hours, my informant has been in the premises situated at 18590 Echo Way, City of Gladstone, County of Clackamas, State of Oregon. At the time my informant was in said premises, my informant did observe a resident of those premises, a person known to my infor-mant as Fredrick Koppenhafer, to be in the possession of in excess of one-quarter ounce of cocaine. That my infor-mant also informs me that Mr. Koppenhafer drives an orange Ford Mustang, Oregon license plate number HMJ505; and that on numerous occasions Mr. Kop-penhafer uses this vehicle to transport and deliver cocaine. That within the past 60 days, on more than one occasion, Mr. Koppenhafer has transported in said vehicle and deliv-ered cocaine to said informant. That I know from my informant that said informant is aware of what cocaine is because my informant has in the past associated with known cocaine users and dealers and is familiar with the appearance of cocaine and the manner in which it is

packaged and sold and has personally used cocaine in said residence in the past.

"That my informant describes the premises situated at 18590 Echo Way, City of Gladstone, County of Clackamas, State of Oregon, as being a two-story, split-entry, wood-framed residence, blue in color. That this said premises is located on the south side of Echo Way and that the front door is dark brown wood which faces north. That I have personally checked the above described premises and have found them to be as described to me by my informant; and a check with Gladstone Police Department discovered this residence; that being 18590 Echo Way, to coincide with Clackamas County Records as being the correct address for this land plot. That while checking said residence, I observed a 1979 orange Ford Mustang, Oregon plate HMJ505, parked in the driveway;

"That my informant describes the said Fredrick Koppenhafer as being a male white, approximately 28 years of age, 5' 10", 155 - 160 pounds, with brown collar-length hair and blue-green eyes;

"That a check with the Department of Motor Vehicles reveals that Oregon license plate HMJ505 is registered to a 1979 Ford to Koppenhafer. Fredrick C. with a date of birth 5/30/52. That a further check with our computer records show Koppenhafer, Fredrick Carson; male white, dob 5/30/52, as having CRISS #204013 and State Identification #3328150, being 5' 10", 160 pounds, brown hair and hazel eyes. That in checking with Gladstone City Water Department it was found that the billing to 18590 Echo Way, City of Gladstone, was to Fredrick Koppenhafer;

"* * * * *

"And I therefore request that a search warrant issue authorizing a search of the premises or persons above described for the above described and if any of them are found, authorizing seizure of same."

The United States Supreme Court held in *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), that when the affidavit is based on hearsay, it must set forth (1) the informant's basis of knowledge and (2) facts showing the informant's veracity, either by showing (a) that the informant is credible or (b)

that his information is reliable. Because the trial court found that the affidavit did not show the informant's veracity, we consider that part of the test first.

■ ■ An informant's veracity typically is established by showing that the informant has provided information in the past that proved reliable and accurate. *State v. Smith,* 51 Or App 777, 780, 627 P2d 26, *rev den* 291 Or 151 (1981). Here, the affidavit states that the informant has furnished to the affiant and other members of the Portland Police Department "a considerable amount of information regarding the illicit trafficking of narcotics and dangerous drugs in the Portland Metropolitan area," which information was "checked and found to be true and accurate in every respect." As an example of information supplied to the affiant himself, the informant had purchased controlled substances without a prescription, at the affiant's direction, within the past 60 days.

Although the affidavit is not a model of clarity, a fair, common sense reading of it indicates that among the information which the affiant states was checked and found to be accurate in every respect is the information which resulted from the drug purchases made at the affiant's request. The additional information given the affiant by the informant, and found to be accurate, lends further support to the reliability of the informant. Because the affidavit discloses that the informant has supplied specific information in the past, and also in this instance, which the affiant checked and found to be accurate, it is sufficient to establish the informant's veracity. *See also State v. Smith, supra,* 51 Or App at 781 (informant had "provided information concerning narcotic activity of persons within the community * * * which we know to be factual information"); *State v. Henderson,* 40 Or App 27, 29, 594 P2d 419 (1979) (information "has proven to be accurate and reliable each time").

■ Defendants also contend that the first part of the *Aquilar/Spinelli* test is not met, *i.e.,* that the affidavit does not disclose the basis of the informant's knowledge. However, the affidavit establishes that the informant was familiar enough with marijuana and ritalin to make a non-prescription purchase, and that he had used cocaine in

the residence sought to be searched and was familiar with its appearance and its packaging. Given his reliability, that information is clearly sufficient to support the warrant. *See State v. Smith, supra,* 51 Or App at 780.

Finally, defendants argue that the facts recited in the affidavit were "stale" and, therefore, did not support issuance of the warrant. They argue that the presence of drugs in the residence "within the last 48 hours" and of drugs in the car "within the past 60 days" did not furnish probable cause to believe that drugs would be in those locations at the time the warrant was issued.

■ Whether the time elapsed between the observation of the drugs and the issuance of the warrant is too long depends on the circumstances of each case. *State v. Ingram,* 251 Or 324, 327, 445 P2d 503 (1968). Factors relevant to that determination include the amount of contraband said to be on the premises, whether the person possessing the drugs is a resident of the premises and whether there is some prior history of drug activity on the premises. The presence of a large quantity of drugs, or possession by one who lives in the place to be searched along with a prior history of drug activity in that location, support the inference that drugs will still be there at a later time. *See, e.g., State v. Spicer,* 254 Or 68, 456 P2d 965 (1969); *State v. Gribskov,* 45 Or App 403, 608 P2d 593, *rev den* 289 Or 209 (1980); *State v. Black/Black,* 36 Or App 613, 585 P2d 44, *rev den* 284 Or 521 (1978). On the other hand, where the affidavit discloses only that an unspecified quantity of drugs was seen on the premises a single time, *State v. Ingram, supra; State v. Kittredge/Anderson,* 36 Or App 603, 585 P2d 423 (1978); *State v. Scheer,* 49 Or App 937, 620 P2d 973 (1980), or that drug sales were made from the location on two occasions by a non-resident defendant, *State v. Scheidemann,* 252 Or 70, 448 P2d 358 (1968), no such inference can be reasonably drawn. The question is whether the facts in the affidavit support the inference that it is more probable than not that drugs are still at the place to be searched at the time the warrant is issued.

■ Here, the affidavit disclosed that more than one-quarter ounce of cocaine was on the premises in the possession of defendant Koppenhafer, whose residence there was

corroborated by the affiant. In addition, it disclosed the informant's prior drug use on the premises and that defendant Koppenhafer's car had been used to deliver cocaine to the informant on more than one occasion within the past 60 days. Those factors, taken together, support the inference that both the residence and the car were involved in continuous activity involving drugs. The affidavit disclosed a pattern of drug activity sufficient to support issuance of the warrant.[1]

The trial court erred in granting the motion to suppress.

Reversed and remanded for new trial.

---

[1] The fact that the warrant was not executed until four days after its issuance is irrelevant; the question is whether there was probable cause to support the issuance of the warrant at the time it was issued. It was executed within the time provided in the warrant and permitted by statute. ORS 133.565.