Rodney SWEARINGEN, Appellant,

v.

The STATE of Texas.

No. 110–03.

Court of Criminal Appeals of Texas.

June 23, 2004.

Gonzalo P. Rios, San Angelo, for Appellant.

Stephen R. Lupton, Assist. DA, San Angelo, Matthew Paul, State's Attorney, Austin, for The State of Texas.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., WOMACK, KEASLER, and HERVEY, JJ., joined.

Appellant, Rodney Swearingen, was convicted and sentenced to eighteen years' confinement for the felony offense of possession of methamphetamine with intent to deliver. *See* Tex. Health & Safety Code § 481.102(6) & 481.112(a), (d). He appealed the trial court's denial of his pre-trial motion to suppress, which alleged that the drugs found in the search of the residence were the fruits of an illegal search, undertaken pursuant to a search warrant unsupported by probable cause. Appellant argued that the information in the warrant affidavit was stale. The Third Court of Appeals, applying a deferential standard of review, affirmed the judgment of the trial court.

We granted review to resolve a split between the courts of appeals regarding the appropriate standard for reviewing a magistrate's determination that probable cause existed to issue a search warrant.[1] *See State v. Bradley*, 966 S.W.2d 871 (Tex. App.-Austin 1998, no pet.)(great deference); *Daniels v. State*, 999 S.W.2d 52 (Tex.App.-Houston [14th Dist.] 1999, no pet.)(deference); *Ramos v. State*, 31 S.W.3d 762 (Tex.App.-Houston [1st Dist.] 2000, no pet.)(de novo).

## Relevant Facts

On January 10, 2001, the Honorable Eddie Howard, a Justice of the Peace in Tom Green County, signed a search warrant based on a probable-cause affidavit prepared by San Angelo Police Sergeant David Howard. The warrant authorized the search of a house described by the sergeant in the affidavit as being under appellant's control. According to the affidavit, a confidential informant told Sgt. Howard that he had been inside the house within the previous fifty-two hours and had personally seen appellant in possession of "a quantity" of methamphetamine. The affidavit goes on to state that the confidential informant: (1) had provided Sgt. Howard with reliable information on three occasions in the preceding two months, and (2) was familiar enough with methamphetamine to recognize it as the substance possessed by appellant. Later that day, officers of the Rio Concho Drug Task Force executed the search warrant and found a bag containing over forty grams of methamphetamine in plain view two feet from a desk where appellant had been sitting when the officers entered the residence.

Appellant filed a pre-trial motion to suppress the evidence obtained under the search warrant. He argued that the affidavit submitted in support of the search warrant failed to comply with the requirements of Article 18.01 of the Texas Code of Criminal Procedure, that the evidence obtained pursuant to the warrant was, therefore, obtained in violation of the laws of the State of Texas and inadmissible under Article 38.23 of the Code. Appellant argued further that the affidavit stated only that the informant observed appellant in possession of "a quantity" of methamphetamine, without quantifying the amount observed or providing facts from which a quantity could be inferred, such as whether the drugs were being held for sale or for personal use. He also argued that the affidavit was void of any other information that would support an inference that the methamphetamine would still be located in the house more than two days after the informant observed it.

The trial court denied appellant's motion. Appellant was convicted, his motion for new trial was denied, and he appealed, claiming, among other things, that the trial court erred in denying his motion to sup-

---

**1.** Only the first of appellant's two grounds for review was granted: "Whether the court of appeals applied an improper standard of review of a warrant which resulted in an erroneous conclusion that the warrant affidavit set forth facts sufficient to establish probable cause." That single issue was then recast, on this Court's public list of granted PDRs, into two separate issues: (1) Is great deference the proper standard of review of a magistrate's finding of probable cause to issue a warrant, and (2) Did the recitation in the search warrant affidavit that "a quantity of methamphet-amine" had been seen on the premises within the past 52 hours provide probable cause to believe that methamphetamine would be on the premises when the search warrant issued? The only argument appellant provides in his brief to support his claim that the court of appeals erred in concluding that the affidavit did establish probable cause is that the court evaluated the affidavit under an improper standard. Thus, we address only whether the court of appeals applied the correct standard of review.

press. Appellant argued that the affidavit supporting the search warrant did not "set forth sufficient facts to establish probable cause that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched," as required by Article 18.01(c)(3). Appellant recognized the split between the courts of appeals regarding the standard to apply in reviewing a magistrate's determination of probable cause. Appellant argued that the court should review the issue *de novo*, without deference to the magistrate's determination.

The court of appeals, applying a deferential standard of review, held that: (1) the lack of specificity regarding the quantity of methamphetamine observed did not foreclose the conclusion that methamphetamine would likely still be in the house; (2) the issuing magistrate had a substantial basis for concluding that a search of the house would uncover evidence tending to show that appellant possessed methamphetamine; and (3) the trial court, therefore, did not err in overruling appellant's challenge to the adequacy of the affidavit. *Swearingen v. State*, No. 03–02–00227–CR, 2002 WL 31718023 (Tex.App.-Austin 2002)(unpublished). The court of appeals affirmed the judgment of the trial court.

Appellant sought review from this Court on the grounds that the court of appeals applied an improper standard in reviewing the magistrate's probable cause determination which resulted in an erroneous conclusion that the warrant affidavit set forth facts sufficient to establish probable cause. We granted review to consider whether the court of appeals applied the correct standard of review.

## Discussion

■ What standard of review is required in a court of appeals reviewing a magistrate's determination of probable cause is a question of law; one that we review *de novo*.

■ Appellant's probable cause claim is based on Article 18.01, a state statute. In *Johnson v. State*, addressing a probable cause claim based not only on the Fourth Amendment to the United States Constitution but also on both state constitutional and statutory law, we recognized the deferential standard required by *Gates*. *Johnson*, 803 S.W.2d 272, 289 (Tex.Crim.App.1990)(*disapproved in part by Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991)).

In *Illinois v. Gates*, 462 U.S. 213, 234–37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court had reaffirmed the traditional standard for reviewing an issuing magistrate's probable cause determination: "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." In explaining why "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," the Supreme Court stated that the deference paid to the magistrate's determination of probable cause was based on "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.*

Our subsequent opinion in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997), discussing the standard of review regarding a determination of probable cause in a warrantless search situation, caused some confusion regarding the standard of review applies to a magistrate's determination of probable cause. Some courts of appeals have continued to apply the deferential standard articulated in *Johnson*. *See State v. Bradley*, 966 S.W.2d 871. Others have held that where credibility is not an issue, i.e., where probable cause is simply

a question of law, a *de novo* review should be conducted. *Ramos v. State,* 31 S.W.3d 762.

In *Guzman,* we relied in part on *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas,* a case involving a warrantless search, the Supreme Court held that appellate review of reasonable suspicion and probable cause should be conducted *de novo. Ornelas,* 517 U.S. at 697–98, 116 S.Ct. 1657. However, the Supreme Court went on to distinguish its prior holding in *Gates,* that a magistrate's decision to issue a search warrant should be given deference and not reviewed *de novo.* The Supreme Court reiterated that the distinction between the standards of review applied to the determination of probable cause in warrant and warrantless searches was based on the Fourth Amendment's strong preference for searches conducted pursuant to a warrant and the need for an incentive to encourage police to use the warrant process. *Ornelas,* 517 U.S. at 698, 116 S.Ct. 1657.

■ *Guzman* merely articulated a general principle for determining when an issue should be reviewed *de novo* and when it should be reviewed deferentially. The standard to be applied to the review of a magistrate's determination of probable cause in issuing a search warrant is an exception to the general rule set out in *Guzman.* It is an exception mandated by the Fourth Amendment.

■ We recognize the distinction between the standards of review applicable to warrantless searches and searches pursuant to a warrant and reaffirm that a magistrate's determination to issue a warrant is subject to the deferential standard of review articulated in *Gates* and *Johnson.*

The court of appeals stated and applied the standard of review set forth in *Johnson.* Although we are not reviewing the correctness of the court of appeals' ultimate conclusion, we can tell by the court's language that it did apply the correct standard in reaching that conclusion. The court of appeals found that the absence of facts from which a quantity of drugs could be inferred was not fatal to the magistrate's finding of probable cause because, considering the affidavit as a whole and the reasonable inferences it supports, a substantial basis existed to support a finding of probable cause. The court reasoned that, although the magistrate may not have been able to rule out the possibility that the methamphetamine had already been consumed or moved, the magistrate was not foreclosed from concluding that it was reasonably likely that a search of the house would uncover evidence tending to show that Appellant was guilty of possession of methamphetamine.

We hold that the court of appeals applied the correct standard of review. We affirm the judgment of the court of appeals.

COCHRAN, J., filed a dissenting opinion in which MEYERS, PRICE, and JOHNSON, JJ., joined.

COCHRAN, J., dissenting, in which MEYERS, PRICE, and JOHNSON, JJ., joined.

I respectfully dissent. We granted appellant's first ground for review which, in his words, read:

> Whether the court of appeals applied an improper standard of review of a warrant which resulted in an erroneous conclusion that the warrant affidavit set forth facts sufficient to establish probable cause.

That single issue was then recast, on this Court's public list of granted PDRs, into two separate issues:

1) Is great deference the proper standard of review of a magistrate's finding of probable cause to issue a warrant?

2) Did the recitation in the search warrant affidavit that "a quantity of methamphetamine" has been seen on the premises within the past 52 hours provide probable cause to believe that methamphetamine would be on the premises when the search warrant issued?

I agree with the majority's conclusion that reviewing courts should grant great deference to the magistrate's finding of probable cause in a search warrant affidavit. I respectfully disagree that, even granting great deference to the magistrate, this affidavit set forth sufficient facts to support a finding of probable cause.

Whether the facts in a search warrant affidavit are sufficient to establish probable cause to believe that the item sought will be found in the place to be searched is determined by examining the totality of the circumstances.[1] The facts are sufficient if they would "justify a conclusion that the object of the search is probably on the premises."[2] The magistrate is also permitted to draw reasonable inferences from the facts and circumstances set out in the affidavit,[3] but those reasonable inferences must support the common-sense conclusion that the item sought is probably still located at a certain place.

There is one fact and one fact only to support probable cause set out in this affidavit: The confidential informant was inside appellant's house within the previous 52 hours and he saw appellant in possession of "a quantity" of methamphetamine. No one knows how much. No one knows the circumstances. No one knows whether any remains. Did the informant sell appellant a baggie of methamphetamine? Did appellant sell the informant a baggie of methamphetamine? Did the two of them consume all of the methamphetamine? Is appellant in the business of selling methamphetamine? Did appellant offer to sell or give the informant any methamphetamine in the future? Is appellant known to the informant as a seller or user of methamphetamine? Were there methamphetamine manufacturing equipment or materials at the house? A reasonable person needs sufficient facts before inferring probable cause.

The issue here is whether the mere possession of some unknown quantity of a consumable controlled substance in a home on one day establishes probable cause to believe that some quantity of that same controlled substance will still be located at that home more than two days later. By analogy, does the statement "X possessed a quantity of barbecued ribs at his home on Tuesday," give rise to probable cause that X possesses barbecued ribs (either those same ribs or some others) on Friday? Standing alone, I do not believe that it does. Consumables tend to be consumed, so the reasonable person needs some additional facts—such as the fact that X is in the business of selling barbecued ribs, or X frequently possesses barbecued ribs, X promised to have more barbecued ribs on Friday, X has a well-used barbecue grill with several bags of

---

1. *Illinois v. Gates,* 462 U.S. 213, 228–29, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Ramos v. State,* 934 S.W.2d 358, 362–63 (Tex.Crim.App. 1996).

2. *Cassias v. State,* 719 S.W.2d 585, 587 (Tex. Crim.App.1986).

3. *Id.* at 587–88; *see Gish v. State,* 606 S.W.2d 883, 886 (Tex.Crim.App.1980).

charcoal and bottles of sauce nearby, X was seen at the grocery store buying a pack of ribs on Thursday, or serving ribs at his house party Thursday night—before concluding that possession of barbecued ribs on one day makes it probable or likely that he possesses that same item on another day.

Probable cause to believe that an item is located at a certain place evaporates over time. The evaporation of "probable cause" is determined not by law or standards of review, but rather by reason and common sense. As Judge Moylan has phrased it:

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.[4]

There is nothing in this affidavit to suggest that the unknown "quantity" of methamphetamine that appellant possessed in his home on one day did not disappear with the speed of a hare rather than the lumbering of the tortoise.

As Professor LaFave notes, staleness of information in a search warrant affidavit depends on the particular circumstances of the case: "'a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item which is not consumable or which is innocuous in itself or not particularly incriminating.'"[5] A small quantity of lip-smacking barbecued ribs or illicit methamphetamine may be quickly consumed within a very short period of time. A wholesale or retail seller (or neighborhood provider) of either barbecued ribs or methamphetamine is likely to remain in business for a much longer period of time. An ongoing enterprise tends to continue over time, but a single possession of a consumable contraband may be over with a gulp or snort and never reoccur.

When the *only* fact spelled out in the affidavit is that a person possessed "a quantity" of a controlled substance in his home, that one unadorned fact is insufficient to support a finding that he probably (or likely) possessed that controlled substance two days later.[6] I therefore respectfully dissent.

---

4. *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78, 106 (1975).

5. 2 WAYNE LAFAVE, SEARCH AND SEIZURE § 3.7(a), at 348 (3d ed.1996) (quoting *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir.1975)).

6. *See State v. Boneventure,* 374 So.2d 1238, 1239 (La.1979) (insufficient facts to support finding of probable cause in search warrant when confidential informant observed "a quantity" of marijuana offered for consumption in defendant's home two days earlier; noting that "[a] 'quantity' of marijuana is an indefinite amount" and when the quantity was "offered for consumption," it "could be consumed by the person or persons to whom it was offered," thus "there was not probable cause to believe that the same consumable amount of marijuana which was offered to a

person or persons for consumption approximately two days before remained at the place to be searched"); *State v. Kittredge*, 36 Or. App. 603, 585 P.2d 423, 424 (1978) (insufficient facts to support finding of probable cause when only facts in affidavit were that confidential informant was in defendant's residence within past 96 hours and saw some unknown quantity of marijuana); *State v. Scheer*, 49 Or.App. 937, 620 P.2d 973, 974–75 (1980) (facts that informant had been inside house within past 48 hours and seen "a quantity of green vegetable material" was insufficient to support probable cause finding that marijuana would still be located at house at time search warrant issued; stating that "[w]e do not mean to suggest that it is necessary for the informant to describe the particular quantity involved. We do suggest, however, that *something* must be said, in addition to the description, 'a quantity,' to suggest that either the amount in question is sufficiently large so that it will not be immediately consumed, or that the parties present are not likely to consume it, or that the item sought is not consumable, or the like. Here, there are no such indications"); *State v. Lovato*, 118 N.M. 155, 157–58, 879 P.2d 787, 789–90 (1994) (affidavit setting out confidential informer's statement that he made a "controlled buy" of heroin in defendant's motel room insufficient to establish probable cause to believe defendant would possess heroin 72 hours later because there were no facts in the affidavit that would "support a conclusion that criminal activity at the motel room was of an ongoing, continuous nature"); *People v. Broilo*, 58 Mich.App. 547, 550, 228 N.W.2d 456, 458 (1975) (following rule that "where there has been a substantial delay between observation of criminal activity and issuance of a search warrant based thereon ... no warrant may issue except upon a showing of intervening facts that give reasonable cause to believe that the criminal activity is continuing and presently occurring"); *Shivers v. State*, 258 Ga.App. 253, 257, 573 S.E.2d 494, 498 (2002) (setting out test for staleness as viewing " 'the totality of the circumstances for indications of the existence of reasonable probability that conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant' "; concluding that "there was nothing in the record to indicate that the marijuana, a consumable drug, would be found at [defendant's] house two days later when the warrant was issued"); *State v. Josephson*, 123 Idaho 790, 794–95, 852 P.2d 1387, 1389–90 (1993) (information in affidavit insufficient to establish probable cause because affidavit did not recount "criminal activities of a protracted or continuous nature"; time delay between officer's finding marijuana cigarette butts, rolling papers, bag with marijuana residue, and five plant stems in trash and obtaining warrant did not establish probable cause as these items "were only suggestive of the fact that someone had smoked marijuana at [defendant's] residence ... [they] did not corroborate an inference that there was continuing criminal activity"); *compare Ilo v. State*, 350 Ark. 138, 148–150, 85 S.W.3d 542, 548–50 (2002) (quoting *Andresen* and noting that "[t]he crimes of *selling* narcotics and illegal liquor have been recognized as types of ongoing criminal activity that is considered protracted or continuous, thus establishing a course of conduct"; holding that officers were entitled to "no knock" warrant when affidavit set out course of selling marijuana and fact that during two of these sales defendant was seen with a firearm) (emphasis added).