# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00288-CR

**Josephine Alicia Gallardo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
### NO. 09-193-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Josephine Alicia Gallardo guilty of possessing more than four ounces of both cocaine and methamphetamine with the intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2010). The jury assessed punishment at eight years' imprisonment for the cocaine possession and at ten years' imprisonment and a $10,000 fine for the methamphetamine possession, with the latter punishment probated. In a single point of error, appellant contends that the trial court erred by overruling her motion to suppress evidence. We overrule this contention and affirm the convictions.

On February 6, 2009, police officers executed a search warrant at 404 Yucca Drive in Round Rock, a house occupied by appellant and Brandon Valverde. During this search, the officers seized the controlled substances and other evidence tending to prove appellant's guilt of the charged offenses. Appellant contends, as she did below, that the affidavit in support of the search

warrant did not give the magistrate probable cause to believe that controlled substances and related paraphernalia would be found in the house.[1]

No search warrant may issue unless a sworn affidavit is first presented to the magistrate setting forth sufficient facts to show that probable cause exists for its issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2010). A search warrant affidavit must be interpreted in a common sense and realistic manner, recognizing that reasonable inferences may be drawn from the affidavit. *Hespeth v. State,* 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref d). A reviewing court must give the issuing magistrate's determination of probable cause great deference, and the decision to issue the warrant will be sustained if the magistrate had a substantial basis for concluding that probable cause was shown. *Illinois v. Gates,* 462 U.S. 213, 236-37 (1983); *Swearingen v. State,* 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *State v. Davila*, 169 S.W.3d 735, 738 (Tex. App.—Austin 2005, no pet.).

The affiant in this case was Officer Jerry Floyd. After describing his general knowledge of controlled substance crimes based on his training and experience, Floyd detailed the facts on which he based his belief that appellant and Valverde possessed controlled substances and related paraphernalia at their residence:

---

[1] The State urges that appellant failed to preserve the alleged error because she did not reurge her objection when the evidence was offered and admitted at trial. The rule is, however, that when the trial court overruled a pretrial motion to suppress evidence, error is preserved and the defendant need not subsequently object to the admission of the same evidence during the trial. *Garza v. State*, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004); *see* Tex. R. Evid. 103(a)(1).

• In June 2008, an anonymous source told Floyd that Valverde was selling cocaine at his residence, which was said to be 1607 Dale Cove in Round Rock. This informer also told Floyd that Valverde drove a white Chevrolet pickup truck with the license plate 4ZYD49. A license plate check confirmed that the truck was registered to Valverde at the Dale Cove address.

• In the course of his investigation, Floyd learned that Valverde had moved to 404 Yucca Drive in Round Rock. Floyd began to conduct surveillance at this address and, using driver's license photographs obtained from the department of public safety, he identified Valverde and appellant entering and leaving the house on a daily basis.

• On September 3, 2008, Floyd was conducting surveillance at 404 Yucca Drive when a white male driving a Ford pickup truck knocked on the door, was admitted, and left four minutes later. At Floyd's request, a traffic officer stopped the Ford pickup after it left the Yucca Drive address. The driver and sole occupant was identified as Terry Sharp. The officer found 1.9 grams of cocaine in the pickup.

• On October 21, 2008, Floyd was again watching the Yucca Drive house when a white male driving a Ford Ranger knocked, was admitted, and left about four minutes later. At Floyd's request, a traffic officer stopped the Ranger after it left the suspect premises. The driver and sole occupant was identified as Brendon Pertolanitz. The officer found 1.1 grams of cocaine in the Ranger. Pertolanitz was taken to the police station where he was advised of his rights and interviewed by Floyd. He told Floyd that he had purchased the cocaine at the Yucca Drive house from a woman he knew as Josie after first making arrangements by telephone. Pertolanitz told Floyd that he had purchased cocaine at 404 Yucca Drive on several occasions, either from Josie or from a man he knew as Brandon. Pertolanitz identified appellant's driver's license photograph as Josie and Valverde's driver's license photograph as Brandon.

• On February 3, 2009, Floyd was conducting surveillance at 404 Yucca Drive when a black male driving a PT Cruiser was admitted into the house and left less than a minute later. Floyd followed the man as he drove away in the PT Cruiser and then detained him. The man, identified as Clifton Armstrong, had 0.7 grams of cocaine in his shirt pocket. After being taken to the police station and advised of his rights, Armstrong told Floyd that he had purchased the cocaine from Josie at 404 Yucca Drive after first making arrangements by telephone. He said that he had purchased cocaine from Josie and Brandon twelve times in the past eighteen months. Armstrong identified appellant's driver's license photograph as the Josie from whom he had purchased cocaine at 404 Yucca Drive and Valverde's drivers license photograph as the Brandon from whom he had purchased cocaine at that address.

3

• On February 3, 2009, Floyd ran a criminal record check on Valverde and learned that he had fifteen arrests for various offenses including controlled substance delivery and possession. On February 4, 2009, Floyd learned from city records that the utilities at 404 Yucca Drive were in Valverde's name.

Appellant makes several challenges to the affidavit. First, she urges that the information received from the anonymous informer in June 2008 regarding drug sales at 1607 Dale Cove was unreliable because appellant and Valverde did not live at that address. To the contrary, the affidavit stated that Valverde's truck was registered at that address. That Valverde moved to 404 Yucca Drive does not, in itself, render the informer's tip unreliable.

Next, appellant argues that the September 3, 2008 incident involving Terry Sharp did not contribute to a finding of probable cause because there was no showing that Sharp obtained the cocaine at 404 Yucca Drive. This would be a more persuasive argument if this were the only alleged drug transaction described in the affidavit. However, in light of the information describing the actions and statements of Brendon Pertolanitz and Clifton Armstrong on October 21, 2008 and February 3, 2009, the discovery of cocaine in Sharp's possession following his visit to 404 Yucca Drive adds some measure of support to the magistrate's finding of probable cause.

Third, appellant argues that the information received from Pertolanitz was stale, having been obtained by Floyd over three months before the affidavit was presented to the magistrate. Once again, this argument would be more persuasive if the Pertolanitz incident were the only alleged drug transaction described in the affidavit. Given the information regarding the purchase of cocaine by Armstrong on February 3, 2009, three days before the warrant issued, and the information regarding Sharp's activities the previous September, the magistrate could reasonably

4

conclude that the Pertolanitz transaction was part of a larger body of evidence demonstrating an ongoing drug-trafficking enterprise at 404 Yucca Drive. *See State v. Bradley*, 966 S.W.2d 871, 875-76 (Tex. App.—Austin 1998, no pet.).

Finally, appellant contends that the information received from Pertolanitz and Armstrong was not credible because both men were under arrest for possessing the cocaine at the time they gave the statements incriminating appellant. Appellant relies on the opinion in *State v. Wester*, 109 S.W.3d 824 (Tex. App.—Dallas 2003, no pet.). In that case, a man named Elliott was found to be in possession of marihuana after a traffic stop. *Id*. at 825. During questioning following his arrest, Elliott told officers that he had purchased the marihuana from Wester at Wester's residence. *Id*. Based solely on Elliott's statement, a warrant was issued to search Wester's house. *Id*. at 826. The court of appeals held that Elliott's statement to the police lacked credibility because Elliott "was a suspect under arrest for the very drugs he claimed to have purchased from Wester and was being interrogated at the police station when he gave his statement." *Id*. at 827.

Appellant's case is distinguishable from *Wester*. Insofar as the affidavit in that case reflected, Elliott's statement following his arrest was the first time the police had ever heard of Wester. Floyd, on the other hand, was already investigating Valverde as a possible drug dealer when he witnessed both Pertolanitz and Armstrong enter and quickly leave the Yucca Drive house. The statements they gave to Floyd were corroborated by the officer's observations of their activities on the days in question and by the other information Floyd had accumulated during his investigation. Moreover, Pertolanitz and Armstrong were able to identify photographs of appellant and Valverde, who Floyd already knew lived at 404 Yucca Drive.

5

We conclude that the totality of the information contained in the affidavit gave the magistrate a substantial basis for finding probable cause to issue the search warrant. The point of error is overruled, and the judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: May 19, 2011

Do Not Publish

6