TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00288-CR







Josephine Alicia Gallardo, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 09-193-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Josephine Alicia Gallardo guilty of possessing more than four 
ounces of both cocaine and methamphetamine with the intent to deliver. See Tex. Health & Safety 
Code Ann. § 481.112 (West Supp. 2010). The jury assessed punishment at eight years'
imprisonment for the cocaine possession and at ten years' imprisonment and a $10,000 fine for the
methamphetamine possession, with the latter punishment probated. In a single point of error, 
appellant contends that the trial court erred by overruling her motion to suppress evidence. We
overrule this contention and affirm the convictions.

On February 6, 2009, police officers executed a search warrant at 404 Yucca Drive
in Round Rock, a house occupied by appellant and Brandon Valverde. During this search, the
officers seized the controlled substances and other evidence tending to prove appellant's guilt of the
charged offenses. Appellant contends, as she did below, that the affidavit in support of the search
warrant did not give the magistrate probable cause to believe that controlled substances and related
paraphernalia would be found in the house. (1)

No search warrant may issue unless a sworn affidavit is first presented to the
magistrate setting forth sufficient facts to show that probable cause exists for its issuance. Tex. Code
Crim. Proc. Ann. art. 18.01(b) (West Supp. 2010). A search warrant affidavit must be interpreted
in a common sense and realistic manner, recognizing that reasonable inferences may be drawn from
the affidavit. Hespeth v. State, 249 S.W.3d 732, 737 (Tex. App.--Austin 2008, pet. ref d). A 
reviewing court must give the issuing magistrate's determination of probable cause great deference,
and the decision to issue the warrant will be sustained if the magistrate had a substantial basis for
concluding that probable cause was shown. Illinois v. Gates, 462 U.S. 213, 236-37 (1983);
Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); State v. Davila, 169 S.W.3d 735,
738 (Tex. App.--Austin 2005, no pet.).

The affiant in this case was Officer Jerry Floyd. After describing his general
knowledge of controlled substance crimes based on his training and experience, Floyd detailed the
facts on which he based his belief that appellant and Valverde possessed controlled substances and
related paraphernalia at their residence:


 In June 2008, an anonymous source told Floyd that Valverde was selling cocaine
at his residence, which was said to be 1607 Dale Cove in Round Rock. This
informer also told Floyd that Valverde drove a white Chevrolet pickup truck with the
license plate 4ZYD49. A license plate check confirmed that the truck was registered
to Valverde at the Dale Cove address.


 In the course of his investigation, Floyd learned that Valverde had moved to
404 Yucca Drive in Round Rock. Floyd began to conduct surveillance at this
address and, using driver's license photographs obtained from the department of
public safety, he identified Valverde and appellant entering and leaving the house on
a daily basis. 


 On September 3, 2008, Floyd was conducting surveillance at 404 Yucca Drive
when a white male driving a Ford pickup truck knocked on the door, was admitted,
and left four minutes later. At Floyd's request, a traffic officer stopped the Ford
pickup after it left the Yucca Drive address. The driver and sole occupant was
identified as Terry Sharp. The officer found 1.9 grams of cocaine in the pickup.


 On October 21, 2008, Floyd was again watching the Yucca Drive house when a
white male driving a Ford Ranger knocked, was admitted, and left about four minutes
later. At Floyd's request, a traffic officer stopped the Ranger after it left the suspect
premises. The driver and sole occupant was identified as Brendon Pertolanitz. The
officer found 1.1 grams of cocaine in the Ranger. Pertolanitz was taken to the police
station where he was advised of his rights and interviewed by Floyd. He told Floyd 
that he had purchased the cocaine at the Yucca Drive house from a woman he knew
as Josie after first making arrangements by telephone. Pertolanitz told Floyd that he
had purchased cocaine at 404 Yucca Drive on several occasions, either from Josie or 
from a man he knew as Brandon. Pertolanitz identified appellant's driver's license
photograph as Josie and Valverde's driver's license photograph as Brandon.


 On February 3, 2009, Floyd was conducting surveillance at 404 Yucca Drive when 
a black male driving a PT Cruiser was admitted into the house and left less than a
minute later. Floyd followed the man as he drove away in the PT Cruiser and then
detained him. The man, identified as Clifton Armstrong, had 0.7 grams of cocaine
in his shirt pocket. After being taken to the police station and advised of his rights,
Armstrong told Floyd that he had purchased the cocaine from Josie at
404 Yucca Drive after first making arrangements by telephone. He said that he had
purchased cocaine from Josie and Brandon twelve times in the past eighteen
months.  Armstrong identified appellant's driver's license photograph as the Josie
from whom he had purchased cocaine at 404 Yucca Drive and Valverde's drivers
license photograph as the Brandon from whom he had purchased cocaine at
that address.


 On February 3, 2009, Floyd ran a criminal record check on Valverde and learned 
that he had fifteen arrests for various offenses including controlled substance delivery
and possession. On February 4, 2009, Floyd learned from city records that the
utilities at 404 Yucca Drive were in Valverde's name.



Appellant makes several challenges to the affidavit. First, she urges that the 
information received from the anonymous informer in June 2008 regarding drug sales at 1607 Dale
Cove was unreliable because appellant and Valverde did not live at that address. To the contrary, 
the affidavit stated that Valverde's truck was registered at that address. That Valverde moved to
404 Yucca Drive does not, in itself, render the informer's tip unreliable.

Next, appellant argues that the September 3, 2008 incident involving Terry Sharp did
not contribute to a finding of probable cause because there was no showing that Sharp obtained the
cocaine at 404 Yucca Drive. This would be a more persuasive argument if this were the only alleged 
drug transaction described in the affidavit. However, in light of the information describing the
actions and statements of Brendon Pertolanitz and Clifton Armstrong on October 21, 2008 and 
February 3, 2009, the discovery of cocaine in Sharp's possession following his visit to 404 Yucca
Drive adds some measure of support to the magistrate's finding of probable cause.

Third, appellant argues that the information received from Pertolanitz was stale,
having been obtained by Floyd over three months before the affidavit was presented to the
magistrate. Once again, this argument would be more persuasive if the Pertolanitz incident were the
only alleged drug transaction described in the affidavit. Given the information regarding the
purchase of cocaine by Armstrong on February 3, 2009, three days before the warrant issued, and 
the information regarding Sharp's activities the previous September, the magistrate could reasonably
conclude that the Pertolanitz transaction was part of a larger body of evidence demonstrating an
ongoing drug-trafficking enterprise at 404 Yucca Drive. See State v. Bradley, 966 S.W.2d 871,
875-76 (Tex. App.--Austin 1998, no pet.).

Finally, appellant contends that the information received from Pertolanitz and 
Armstrong was not credible because both men were under arrest for possessing the cocaine at the
time they gave the statements incriminating appellant. Appellant relies on the opinion in State
v. Wester, 109 S.W.3d 824 (Tex. App.--Dallas 2003, no pet.). In that case, a man named Elliott was
found to be in possession of marihuana after a traffic stop. Id. at 825. During questioning following
his arrest, Elliott told officers that he had purchased the marihuana from Wester at Wester's
residence. Id. Based solely on Elliott's statement, a warrant was issued to search Wester's house. 
Id. at 826. The court of appeals held that Elliott's statement to the police lacked credibility because
Elliott "was a suspect under arrest for the very drugs he claimed to have purchased from Wester and
was being interrogated at the police station when he gave his statement." Id. at 827.

Appellant's case is distinguishable from Wester. Insofar as the affidavit in that case 
reflected, Elliott's statement following his arrest was the first time the police had ever heard of
Wester. Floyd, on the other hand, was already investigating Valverde as a possible drug dealer when
he witnessed both Pertolanitz and Armstrong enter and quickly leave the Yucca Drive house. The
statements they gave to Floyd were corroborated by the officer's observations of their activities on
the days in question and by the other information Floyd had accumulated during his investigation. 
Moreover, Pertolanitz and Armstrong were able to identify photographs of appellant and Valverde,
who Floyd already knew lived at 404 Yucca Drive.

We conclude that the totality of the information contained in the affidavit gave the
magistrate a substantial basis for finding probable cause to issue the search warrant. The point of
error is overruled, and the judgment of conviction is affirmed.



 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: May 19, 2011

Do Not Publish
1. The State urges that appellant failed to preserve the alleged error because she did not reurge
her objection when the evidence was offered and admitted at trial. The rule is, however, that when
the trial court overruled a pretrial motion to suppress evidence, error is preserved and the defendant
need not subsequently object to the admission of the same evidence during the trial. Garza v. State,
126 S.W.3d 79, 84 (Tex. Crim. App. 2004); see Tex. R. Evid. 103(a)(1).