# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00520-CR

**John Jacob Uballe, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-08-904048, HONORABLE BOB PERKINS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

John Jacob Uballe was charged with four counts of burglary. *See* Tex. Penal Code Ann. § 30.02(a)(3) (West 2003). All four counts arose from a single incident in which Uballe allegedly entered a habitation without permission and committed a robbery, a kidnapping, and two assaults. A jury convicted Uballe on all four counts and assessed punishment at 50 years' imprisonment for the robbery count, 30 years' imprisonment for the kidnapping count, and 20 years' imprisonment for each of the assault counts. The trial court imposed only the 50-year robbery sentence. Uballe asserts that (1) the evidence was legally and factually insufficient to support his conviction; (2) the trial court erred by admitting evidence obtained through illegal searches; (3) the trial court erred by failing to require the State to elect between the four burglary counts before punishment was assessed; and (4) the trial court erred by admitting evidence that was irrelevant and unduly prejudicial. We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The jury heard evidence that during the early morning of May 26, 2007, Uballe and two confederates kicked in the back door of Summer Pruneda's house. Pruneda, the older sister of Uballe's ex-girlfriend, was not home at the time. Uballe and his confederates entered the house and found Uballe's ex-girlfriend, Kelly Hernandez, sleeping on a futon with a man named Ernest Garcia. Uballe proceeded to assault Hernandez and Garcia, beating them with his fists and Garcia's belt. During the assault, Uballe or one of his confederates stole several of Garcia's belongings, including cash, clothing, a necklace, and a cellular telephone. The assault ended with Uballe dragging Hernandez from the house, putting her in a car, and driving her back to his apartment (where Hernandez had previously lived with Uballe). Garcia ran to his parents' house.

Pruneda arrived home a short time later to find her front door ajar, her back door kicked in, her house empty, and her bedroom doused with blood. She called the police and then drove to Uballe's apartment, where she suspected her sister had been taken.[1] She tried several times en route to call Hernandez and eventually got through. Pruneda testified that over the course of several brief conversations, Hernandez sounded frightened, stated that Uballe had a gun and would not let her go, and stated that Uballe had taken her to a Motel 6. Pruneda arrived at Uballe's apartment complex, where she met up with police who had been dispatched to the scene. The shades on Uballe's windows were drawn, and there were no signs of activity within his apartment. Uballe's

---

[1] Pruneda had seen Uballe earlier in the evening wearing a striped shirt. Pruneda testified that she suspected Uballe had taken her sister to his apartment because she found the striped shirt in her house.

car was parked nearby, however, and it had a bullet hole in its windshield. A detective testified that the hood of the car felt warm, suggesting that the car had recently been driven.

The police formed a staging area near the apartment complex. The amount of time they waited there is uncertain, but during that time detectives were able to determine that no Motel 6 had a record of Uballe and Hernandez checking in. The police decided to conduct a warrantless "dynamic entry" of Uballe's apartment rather than wait for a search warrant. Upon entry, the police found Uballe and Hernandez in the front room. They found Andrew Serrato, a friend of Uballe's, and Katie Gabel, Serrato's girlfriend, in the bedroom. Serrato and Gabel had been at Uballe's apartment all night and had not been involved in the burglary of Pruneda's house. The police conducted a protective sweep of the whole apartment, during which they spotted two handguns in an attic space.

After removing all four of the apartment's occupants, the police obtained a search warrant and returned for a thorough search of Uballe's apartment and car. The search yielded, among other things, the two previously spotted handguns and some ammunition. Detectives later determined that Uballe's fingerprints were on the gun and that the gun had been used in a shooting that occurred near Uballe's apartment the same night.

The State subsequently charged Uballe with four counts of burglary—one for the robbery of Garcia, one for the kidnapping of Hernandez, and one each for the assaults of Garcia and Hernandez. *See id*. (person commits burglary "if, without the effective consent of the owner, the person . . . enters a . . . habitation and commits or attempts to commit a felony, theft, or an assault."). The jury returned a guilty verdict on all four counts. During the punishment phase, the State

3

introduced evidence it had seized while executing the search warrant, including the guns found in Uballe's apartment. It also introduced evidence regarding the involvement of one of the guns in the shooting that had occurred near Uballe's apartment the night of the burglary. Uballe testified during the punishment phase and admitted that he had broken into Pruneda's house and assaulted Garcia and Hernandez. He denied, however, that he had robbed Garcia or removed Hernandez from the house against her will.

The jury assessed punishment at 50 years on the robbery count, 30 years on the kidnapping count, and 20 years on each of the assault counts. In accordance with its understanding of the relevant case law, the trial court imposed only the 50-year robbery sentence. *See Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (when defendant is found guilty on multiple counts arising from single unlawful entry, court should impose punishment only on count for which longest sentence was assessed). Uballe filed this appeal.

## STANDARD OF REVIEW

We review the evidence underlying a criminal conviction for legal and factual sufficiency. In conducting a legal-sufficiency review, we ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In doing so, we assess all of the evidence in the light most favorable to the prosecution. *Id*. We will uphold the verdict unless a rational fact-finder must have had reasonable doubt as to an essential element. *Id*. at 518.

In conducting a factual-sufficiency review, we consider all of the evidence in a neutral light and ask (1) whether the evidence supporting the conviction is too weak to support the

4

fact-finder's verdict, and (2) whether the fact-finder's verdict is against the great weight and preponderance of the evidence. *Id*. We must defer to the jury's findings and cannot override the verdict simply because we disagree with it. *Id*.

We review trial-court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold a trial court's determination on the admissibility of evidence if it is reasonably supported by the record and correct under any applicable legal theory. *Id*.

We deferentially review a magistrate's decision to grant a search warrant. *See Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004). We will sustain a magistrate's determination that probable cause existed to justify issuance of a warrant if, from the totality of the circumstances reflected in the warrant application, the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id*. at 810.

## DISCUSSION

Uballe raises six issues on appeal. We will address them in turn, although we address his legal- and factual-sufficiency issues jointly.

### *Whether the Evidence Was Legally or Factually Sufficient to Support a Conviction*

Uballe argues that the evidence was legally and factually insufficient to support a conviction because there was no evidence that he broke into Pruneda's home with the intent to rob Garcia. He argues, rather, that he "entered the home with the intent of confronting Hernandez" or, alternatively, "with the intent of confronting Hernandez and beating up her new boyfriend." Uballe

5

argues that "[a]ll of the evidence that was presented showed that the intent to take Garcia's clothing and other articles was made after the entry was effected." Finally, Uballe notes that "none of [Garcia's] missing items were found on or at Appellant's home, or in his vehicle."

Uballe misreads the burglary statute. While the statute includes one species of burglary that requires prior intent, *see* Tex. Penal Code § 32.02(a)(1), it includes another that does not. *See id*. § 32.02(a)(3) (person commits burglary "if, without the effective consent of the owner, the person . . . enters a . . . habitation and commits or attempts to commit a felony, theft, or an assault"). Under the latter species, which the State explicitly pursued at trial and which was included in the jury charge, the State had to prove only that Uballe or one of his confederates[2] committed or attempted to commit a robbery after breaking into Pruneda's house. Uballe does not argue that a robbery was not committed or attempted; he merely claims that the intent to commit the robbery was formed after he and his confederates broke into the house. Under the statute, that qualifies as burglary. *See id*.; *see also DeVaughn v. State*, 749 S.W.2d 62, 66 (Tex. Crim. App. 1988); *Martinez v. State*, 269 S.W.3d 777, 784 (Tex. App.—Austin 2008, no pet.). As a result, Uballe's legal- and factual-sufficiency arguments fail. We overrule Uballe's first and second issues.

***Whether the Trial Court Erred by Admitting the Fruits of the Warrantless Entry into Uballe's Apartment***

Uballe argues that the warrantless entry of his apartment was unjustified. During that entry and the subsequent protective sweep, the police saw evidence (e.g., handguns and a computer)

---

[2] The jury charge included an instruction on accomplice liability. *See* Tex. Penal Code Ann. § 7.02 (West 2003).

6

on which they based their subsequent application for a warrant. As a result, Uballe argues, the trial court should have suppressed the fruits of both the warrantless entry and the subsequent warranted search.[3]

Uballe acknowledges that the warrantless entry was justified if the police had probable cause to conduct it and exigent circumstances existed. *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006). He argues, however, that the police lacked probable cause and exigent circumstances did not exist because:

- Hernandez told her sister that she was not at the apartment, but rather was at a Motel 6;

- No disturbances or loud noises had come from the apartment;

- The police could not see into the apartment, as the curtains were drawn, and they observed nothing to indicate that anyone was in the apartment;

- No one had been observed entering or leaving the apartment;

- The police could not verify that Uballe still lived in the apartment;

- The victims of the shooting that had occurred nearby the same night, whom police interviewed in the hospital, did not identify Uballe as a participant;

- The police were on the scene for a significant time, up to four hours, before making a dynamic entry; and

- A police sergeant testified that it usually took three hours to obtain a search warrant, and the police had already initiated the process of obtaining a warrant when they decided to make a dynamic entry.

---

[3] Uballe's appellate brief does not, however, actually identify any items of evidence that should have been suppressed during the guilt-or-innocence phase of Uballe's trial.

7

In response, the State argues that the police had probable cause to enter the apartment and exigent circumstances existed because:

- Officers had responded to a bloody crime scene at Pruneda's house and found no victims present;

- Ernest Garcia, who was badly beaten and whom detectives had interviewed in the hospital, told detectives that Uballe had assaulted him and Hernandez;

- The police knew that Uballe was Hernandez's ex-boyfriend;

- The police knew that Hernandez might be injured and in need of medical assistance;

- The police knew that Uballe was a violent gang member;

- Hernandez was not consistently answering her phone, and when she did answer it she sounded scared and upset;

- Hernandez told her sister on the phone that Uballe had a gun;

- Detectives verified that a white Honda parked at Uballe's apartment complex belonged to Uballe, its hood was still warm, and its windshield had a bullet hole in it;

- Witnesses to the burglary of Pruneda's house (presumably Pruneda's neighbors, although the record is not clear) stated that they had seen a female taken from the scene against her will in a white-colored car; and

- The police had verified that Uballe and Hernandez had not checked into a Motel 6.

Based on these facts, the trial court found that the police had probable cause and that exigent circumstances existed. We hold that this finding was not an abuse of discretion. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (we review trial-court ruling on motion to suppress for abuse of discretion). In the context of warrantless searches, probable cause exists when "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene

8

would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Parker*, 206 S.W.3d at 597 (citation and punctuation omitted). Similarly, exigent circumstances exist when officers reasonably believe that someone needs aid or assistance. *Id*. at 597 n.16. Given all the information they possessed, the police officers on the scene could reasonably believe that Uballe was in his apartment, that Hernandez was with him against her will, and that Hernandez needed assistance. *See id*. at 600 ("[T]he determination of whether an officer has probable cause and exigent circumstances to enter a person's home without a warrant is a factual one based on the sum of all the information known to the officer at the time of entry.").[4] Thus, the warrantless entry was legitimate, and the evidence it yielded was not tainted. As a result, the trial court did not abuse its discretion in denying Uballe's motion to suppress. We overrule Uballe's third issue.

### Whether the Trial Court Erred by Failing to Require the State to Elect a Single Burglary Count Before the Punishment Phase

Uballe argues that because a defendant cannot be convicted of multiple burglaries arising from a single unlawful entry, *see Ex Parte Cavazos*, 203 S.W.3d at 337, the trial court erred by allowing the jury to deliberate on all four counts against him. He argues that the trial court should have required the State to elect a single count before submission to the jury. Uballe raised this argument during the jury charge conference, and the trial court rejected it. The court instead allowed

---

[4] The fact that police waited up to four hours before entering the apartment does not change this equation. *See United States v. Webster*, 750 F.2d 307, 327 (5th Cir. 1984) (whether police had opportunity to obtain warrant is but one factor in determining whether police had reasonable belief that exigency existed to justify warrantless entry).

9

the jury to deliberate on all four counts against Uballe and then, after the jury assessed punishment on all four counts, imposed only the longest sentence.

Uballe cites *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988), as support for his argument that the State had to elect a single count for submission to the jury. The indictment in *O'Neal* included a single count of sexual assault, but at trial the State introduced evidence of several assaults. The court of criminal appeals held that in such cases the State must select a single instance of assault for submission to the jury. *See id*. at 771 ("[W]here one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction."). Here, in contrast, the indictment included four burglary counts arising from a single incident.[5] Thus, as the State points out, "an *O'Neal* type election was not implicated in this case because the State did not prove multiple instances of the same conduct or offense, i.e., the State did not present evidence of more than one entry or burglary of a habitation." Rather, consistent with the multiple counts contained in the indictment, the State presented multiple theories of how Uballe committed a single act of burglary. *See* Tex. Penal Code § 30.02(a)(3) (felonies, thefts, and assaults can all support burglary charge). The State was entitled to present evidence supporting each theory and have the jury consider each theory. *See Franklin v. State*, 606 S.W.2d 818, 821 (Tex. Crim. App. 1978)

---

[5] Such multi-count indictments alleging a single crime are proper. *See Franklin v. State*, 606 S.W.2d 818, 821 (Tex. Crim. App. 1978) ("Where several ways an offense may be committed are set forth in a statute and embraced in the same definition, are punishable in the same manner, and are not repugnant to each other, they are not distinct offenses and may be charged in one indictment. An indictment may contain as many counts charging the same transaction as the drafter deems necessary to meet variations in the proof.") (citations omitted).

("Where only one transaction is charged, and different counts are contained in the indictment to meet possible variations of proof, the State is not required to elect upon such counts.").

The court of criminal appeals has indicated the proper procedure for imposing punishment on defendants who are found guilty of multiple counts arising from a single offense: "[o]nce the judge receives the jury's verdicts [on all counts], he should perform the task of deciding what judgment is authorized by those verdicts in light of the controlling law, the indictment, and the evidence presented at trial." *Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007). That is exactly what the trial court did here: it submitted all four counts to the jury and then, after the jury returned guilty verdicts and assessed punishment, determined that only a single sentence (namely, the longest one) could be imposed. *See Ex parte Cavazos*, 203 S.W.3d at 337-38. Because this procedure was proper, we overrule Uballe's fourth issue.

***Whether the Trial Court Erred by Admitting Certain Evidence During the Punishment Phase***

Uballe argues that the trial court erred by admitting evidence during the punishment phase that had been gathered through the warranted search of his apartment. Uballe bases this argument partly on his contention, discussed above, that the warrantless entry of his apartment was unjustified. Because the entry was unjustified, he argues, it was improper for the police to use the observations they made during the entry and subsequent protective sweep as bases for obtaining a search warrant.[6] And because the police's warrant application relied on those observations, Uballe

---

[6] The warrant application mentioned several items that the police saw during the protective sweep of Uballe's apartment.

argues that the resulting warrant and the evidence it yielded were tainted. As a result, Uballe argues, the trial court should have excluded the evidence obtained during the warranted search.

As discussed above, the trial court did not abuse its discretion in ruling that the warrantless entry of Uballe's apartment was justified. Thus, the evidence resulting from that entry, including the evidence obtained via the subsequent warranted search, was not tainted simply because it derived from that entry.

Before considering the other arguments that Uballe makes as to why the trial court should have excluded the evidence obtained during the warranted search of his apartment, we note that Uballe's appellate brief is not clear as to exactly what items of evidence should have been excluded. For example, Uballe notes that police seized a computer from the apartment and states that the computer should have been suppressed, but the computer was never in fact introduced into evidence. Similarly, Uballe complains that the police's warrant application did not justify a warrant issuing for Uballe's car, but the brief does not specifically mention any evidence obtained from the car.[7] Nor does Uballe mention some other items of evidence, such as photographs, that were

---

[7] In any event, the warrant application was not materially defective with regard to the search of Uballe's car. Uballe argues that his Honda "was not properly described" within the warrant application, and that therefore the evidence obtained from his car should have been excluded, because the application named a "white 1999 Honda license plate number 344 FGM" while his car was actually a "[w]hite 1992 Honda license plate 344 FMG." The variance between these two descriptions is legally insignificant; it is exceedingly unlikely that it could have led the police to search the wrong car. *See Etchieson v. State*, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978) ("[M]inor discrepancies, if any, in a search warrant otherwise sufficiently describing the general location of the premises and specifically describing the premises themselves will not vitiate a search warrant for insufficient description. All that is required is that there be sufficient definiteness to enable the officer to locate the property and distinguish it from other places in the community."). Moreover, although the warrant application transposed the last two letters of Uballe's license plate number once, it listed the number properly several times.

admitted during the punishment phase. The only objects Uballe mentions that were actually introduced into evidence were the two handguns found in Uballe's apartment. Thus, we evaluate Uballe's arguments only insofar as they relate to the handguns. *See Mortier v. State*, 498 S.W.2d 944, 945 (Tex. Crim. App. 1973) (appellant waives error if brief does not indicate specific items of evidence that were erroneously admitted).

First, Uballe argues that the police's warrant application did not justify a search after Hernandez had been rescued. Specifically, he argues that

> [t]he warrant [application] is focused on the kidnapping of Hernandez, and although it recites facts consistent with a robbery, it lists the charges as assault and abduction of Hernandez. Meaning, [sic] that the police would have no basis for seeking a search warrant after the recovery of the victim, Hernandez, as the requisite evidence of her assault and abduction would begin and end with her person.

The State does not directly respond to this argument, but rather recites reasons why the warrant would likely have issued even if the police had not observed incriminating evidence during their protective sweep of Uballe's apartment. But a review of the warrant application itself shows that Uballe's characterization of the application is inaccurate. The application did not allege mere kidnapping; it alleged *aggravated* kidnapping, which means that Uballe may have used a weapon. *See* Tex. Penal Code Ann. § 20.04(b) (West 2003). That weapon could still have been in Uballe's apartment after the police rescued Hernandez. Furthermore, the application recites facts relevant not only to kidnapping but also to robbery and assault. It also lists evidence related to the robbery and assault (e.g., Garcia's property, firearms used during the assault) that the police expected to find in

13

Uballe's apartment. Thus, the warrant application did not "focus" on the kidnapping and assault of Hernandez in a manner that rendered a search of the house improper.

Second, Uballe argues that the warrant application materially misstated the information known to the police at the time. The application sought, in part, a warrant to search for "[w]eapons [and] firearms . . . used during the assault," but Uballe argues that no weapons (other than a belt) or firearms "were ever described as being part of the offense." While this statement may be true, the application recited other reasons for a firearms search. First, it stated that Uballe's Honda—which, again, was parked next to his apartment—had a bullet hole in its windshield. Second, it stated that Andrew Serrato, who was extracted from the apartment at the same time Uballe was, told detectives that "Uballe came back this morning bragging about the fact that they had just shot up a van near buy [sic]." Uballe has not challenged these statements, which provided a sufficient basis for issuing a warrant to search for firearms. *See Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) ("The inquiry for reviewing courts" when evaluating warrant application "is whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location. The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that are in the affidavit, not those that are omitted from the affidavit.").

In sum, Uballe has not demonstrated that the trial court should have suppressed the evidence introduced during the punishment phase of trial. We overrule his fifth issue.

***Whether the Trial Court Erred by Admitting Irrelevant and Prejudicial Evidence During the Punishment Phase***

Finally, Uballe argues that the firearms seized from his apartment (1) "had no relevance or nexus to the crime for which Appellant was charged and convicted" and (2) served "purely to inflame the minds of the jury and prejudice Appellant's right to a fair trial." *See* Tex. R. Evid. 402 (irrelevant evidence inadmissible), 403 (evidence may be excluded if probative value substantially outweighed by danger of unfair prejudice). Thus, he argues, the trial court should not have admitted the firearms into evidence during the punishment phase of trial.

Uballe is correct that the State did not attempt to tie the firearms found in his apartment to the burglary charges against him; rather the State attempted to tie the firearms—and, by extension, Uballe—to the shooting that occurred near Uballe's apartment the same night as the burglary. Uballe argues that the State did so to suggest impermissibly that "Appellant's level of violence included attempted murder with those firearms."

Before we address Uballe's relevance argument, we note that he did not raise his rule 403 probativity-versus-prejudice argument during trial. Thus, that argument is waived. *See* Tex. R. App. P. 33.1.

Uballe's relevance argument would be well taken if the State had introduced the firearms into evidence during the guilt-or-innocence phase of trial. During the punishment phase, however, trial courts have great latitude as to what sorts of evidence to admit. *See* Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a)(1) (West Supp. 2009) (During punishment phase, "evidence may be offered . . . as to any matter the court deems relevant to sentencing, including . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been

committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act."). That is to say, evidence is "relevant" during the punishment phase "if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case." *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009).

Here, Uballe's alleged involvement in a shooting was an appropriate issue for the State to raise during sentencing; as the State puts it, "[i]ntroducing the guns found in the appellant's apartment provided the jury with a picture of the appellant's life and with insight into his behavior so that the jury could tailor the appropriate punishment." *See* Tex. Crim. Proc. Code art. 37.07, § 3(a)(1) (during punishment phase, court may admit evidence relevant to defendant's character and bad acts). As a result, we conclude that the trial court did not abuse its discretion in admitting the guns into evidence during the punishment phase. We overrule Uballe's sixth issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: June 2, 2010

Do Not Publish

16