

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00064-CR
## NO. 02-12-00065-CR

RONNIE LEE CROWLEY JR.                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two issues, Appellant Ronnie Lee Crowley Jr. appeals the trial court's denial of his motion to suppress. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

After two controlled drug buys of methamphetamine and surveillance of Crowley's room at the Days Inn & Suites, police conducted a traffic stop and arrested Crowley for possession of drug paraphernalia.  The Tarrant County Narcotics Unit (TCNU) obtained a warrant to search Crowley's room.  In that room, TCNU found methamphetamine, Gamma-Hydroxy Butyric Acid (GHB), and other drugs, along with drug paraphernalia; some of the drugs were in containers labeled with Crowley's name.  A jury convicted Crowley of possession of GHB, 200 grams or more but less than 400 grams, and of possession of methamphetamine, four grams or more but less than 200 grams.  After Crowley's plea of true to the habitual offender paragraph, the trial court sentenced him to thirty-five years' confinement for each conviction, and these appeals followed.

## III.  Suppression

In two issues, Crowley complains that the trial court erred by denying his motion to suppress because the affidavit supporting the search warrant application did not give the magistrate a substantial basis for concluding that probable cause existed.

### A.  The Subject Warrant and Affidavit

The warrant, which issued on June 24, 2011, was supported by an affidavit signed by Grapevine Police Officer D. Yarbrough.  The following is a synopsis of the affidavit's germane contents.

2

On June 8, 2011, a confidential informant (CI) contacted Investigator Yarbrough, who is a seasoned narcotics officer. The CI indicated that Investigator Yarbrough could purchase methamphetamine at the Days Inn & Suites on Trinity Boulevard from "Ron," a white male, "approximately 28–32 years of age, and . . . 5'9" to 6'00" tall." The CI contacted Ron and was told to come to room 221.

Investigator Yarbrough spoke with the CI about the purchase and issued him the currency to make the purchase. The CI and his vehicle were searched and then Investigator Yarbrough followed him to the Days Inn & Suites; Investigator Ceja watched the CI go inside room 221. Not long afterward, the CI left the room and met with Investigator Yarbrough. The CI and his vehicle were searched again, and the CI told Investigator Yarbrough that he had given the money to Ron in exchange for a baggie containing a crystal substance, which he gave to Investigator Yarbrough and which tested positive for methamphetamine.

Six days later, Investigator Yarbrough spoke with the CI about making a second controlled buy from Ron. The CI and his vehicle were searched again, currency was issued to the CI, and the CI contacted Ron, who told him to go to room 221. Investigator Yarbrough set up surveillance of the hotel, and two officers followed the CI to the hotel.

When the CI arrived at the hotel, Investigator Yarbrough saw a male who matched Ron's description walk out of room 221. All three officers saw Ron

meet with the CI. Then the CI and Investigator Yarbrough each left the area and met at a predetermined location.

The CI gave another baggie containing a crystal substance to Investigator Yarbrough, and the CI and his vehicle were searched again. The CI said that he had met with Ron, who sold to him the crystal substance that he said was methamphetamine and that tested positive for methamphetamine.

Another ten days later, on June 24, 2011, Investigator Yarbrough and another officer were conducting surveillance of the Days Inn & Suites when they saw Ron get into a vehicle and drive away. They contacted a Euless police officer, who conducted a traffic stop; Crowley was identified as the driver, placed under arrest for possession of drug paraphernalia, and transported to the Euless Jail.

That same day, Grapevine K-9 Officer Hintz and his canine partner Brinkley, who are certified in the detection of illegal narcotics through the United States Police Canine Association, National Police Canine Association, and National Narcotics Detector Dog Association, conducted a free-air sniff of the front door of room 221, which was publicly accessible, at approximately 8:07 p.m. Officer Hintz reported that Brinkley gave a positive alert for the presence of a narcotic odor coming from inside the hotel room by pawing at the front door.

Investigator Yarbrough also included Crowley's criminal history check in his affidavit, which showed that Crowley was on parole and

4

ha[d] been arrested numerous times with charges that included Terroristic Threat, and Man/Del of a Controlled Substance Penalty Group 1 4<200 grams, Man/Del of a Controlled Substance Penalty Group 1 <1 gram, Possession of a Controlled Substance Penalty Group 1 4 < 200g, and Possession of Controlled Substance Penalty Group 1 1-4 grams.

## B. Standard of Review

While we normally review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, under which we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.* Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see*

5

*Swearingen*, 143 S.W.3d at 811; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

Further, we may not analyze the affidavit in a hyper-technical manner; rather, we must interpret the affidavit "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id.* at 272. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012).

## C. Crowley's Arguments at the Suppression Hearing

At the hearing on his motion, Crowley argued that there was nothing to show the confidential informant's reliability and that the dog's free-air sniff was not a scientifically reliable indicator for probable cause.[2]

In response to Crowley's reliability argument, the trial court stated,

> [I]n this case it involves what appears to be controlled buys and so it's not just relying on a history. It's relying on observable actions . . . , [i]t may be confidential to protect their identity, but the observation and circumstances are directed or monitored by the

---

[2]In his written motion, Crowley also argued that the evidence supporting the search warrant was stale by the time the warrant issued, and the trial court ruled on the motion "based on the assertions contained therein."

officer and not solely having to trust the statement of the, quote, informant. . . . I agree with the principle of law that you stated and I agree with your recitation that the affidavit doesn't go into a past history of why the informant is reliable and why their information can be trusted, but this affidavit goes beyond simply relying on what an informant says versus monitored actions.

And in response to the dog-reliability issue, the trial court stated, "And I understand your limited challenge to the reliability or validity of the free-air search or what significance of it is in a public area."

At the conclusion of the hearing on the motion, the trial court overruled the motion and articulated the following in support of its ruling:

> [The affidavit] describes in legal detail a controlled buy at the premises to be searched on June the 8th of 2011, resulting in a transfer of money of U.S. currency. It further indicates that the CI, as designated in the warrant, and the vehicle were searched prior to the controlled buy and that the CI was under observation during the transaction, that almost a week later on the 14th of June, a similar transaction happened where the CI and vehicle were searched, sent to the residence, that an individual was observed on the room which had been under surveillance and a male who fit the description of Ron, later identified at a traffic stop as Ronnie Lee Crowley . . . was observed at the premises in a conversation with the CI; and that another quantity of controlled substance, specifically methamphetamine, was obtained and the item, both seizures were presumptively tested for the presence of methamphetamine.

> And then ten days later on June the 24th, while conducting surveillance, the affiant observes . . . Crowley . . . leave the premises. [He was] stopped and arrested on apparently unrelated warrants and upon taking [him] into custody, then this free-air sniff takes place in the publically accessible portion, at the front door of Room 221 of the Days Inn & Suites, versus a private residence with a private, open front door area.

> I will say as a matter of fact and law, though, the delay between June 14th and June 24th stretches the edges of the freshness element of a search warrant based upon multiple

7

controlled buys a week apart in the presence of the Defendant at the same location where he'd been previously observed during the course of the controlled substance actions, that even if I accepted your position on the free-air search as being unconstitutional, without a warrant, though, you haven't raised that because it's an open area of an apartment, and I respect your legal candor in that regard, versus a front porch of a private residence . . . but if I just threw that out as junk science, it is my belief, as a matter of fact and law, *based on multiple controlled buys and the ongoing surveillance, that it's close[,] but close enough that would justify a search ten days later in light of a history that had gone on for most of the month.*

But based upon . . . the presence of the dog and the open air outside the door and the certification of the dog as a narcotics detection dog, it's just one piece of a big jigsaw puzzle. And it's not the situation which would concern me more if they just walked a dog up to an anonymous door and it made an alert with no other information. *I consider the dog alert as a corroboration of the issues on the freshness issue, period, not on the issue of whether there were drugs, independently, solely based on the dog. The dog is a small piece of the big jigsaw puzzle, not independent and total grounds for conducting a search and obtaining a warrant.*

So I don't reach the scientific issue in being able to say as a matter of fact and law that the four corners of this warrant are legally sufficient to justify a search warrant of the premises of No. 221 . . . . [Emphasis added.]

The trial court then granted Crowley a running objection to the admissibility of State's Exhibits 1 through 28.

## D. Crowley's Arguments on Appeal

On appeal, Crowley again contends that the affidavit does not contain any statement attesting to the CI's credibility or the CI's and the drug dog's reliability and that "the additional corroborating evidence did not give rise to probable cause that methamphetamines would be found in the hotel room." He further argues that because the second buy took place ten days after the first buy, "any

8

evidence that there may have been drugs in the hotel room from the first buy was stale by the time the search warrant was issued." And he complains that the first drug buy was not observed by the police.

As previously set forth, our review concerns the totality of circumstances set forth in the affidavit, interpreted in a common sense and realistic manner, with reasonable inferences drawn from the factual assertions. That said, with regard to Crowley's argument that the police did not observe the first buy, this case is similar to one addressed by our sister court in *State v. Griggs*, 352 S.W.3d 297 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In that case, an officer received a tip from a confidential informant that drugs were being sold out of a residence by an individual named "Howard." *Id.* at 300–01. The officer conducted a controlled buy of cocaine using the informant and did not witness the transaction, which the informant told him occurred in front of Howard's residence. *Id.* at 300–02. Howard also told the informant that he would return later and that the informant "should return, too, presumably to buy more narcotics." *Id.* at 301, 303. The court concluded that based on the totality of the facts and the inferences drawn from them, the affidavit supported the magistrate's probable cause finding to issue the search warrant for the residence. *Id.* at 303. The court particularly noted that the brief interval when the

officer did not see the informant did not render the circumstances of the controlled buy insufficient to support a probable cause finding.[3]  *Id.* at 306.

It is likewise so under our facts.  In the affidavit supporting the warrant application, we have a tip concerning the location of narcotic sales followed by two controlled buys of methamphetamine and a subsequent traffic stop and arrest for possession of drug paraphernalia, all of which involved Crowley.  These facts alone support the issuance of a warrant even without considering Brinkley's olfactory expertise.  *See id.* at 305 ("The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant.").  And as to the issue of Brinkley's reliability, the United States Supreme Court has recently addressed that issue and held that

> evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.  If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any

---

[3]In contrast to these appeals, the reliability of the *Griggs* informant was not an issue.  *Cf.* 352 S.W.3d at 300 (describing the informant as "credible and reliable").  However, also in contrast to *Griggs*, the affidavit here contained other facts in addition to the controlled buys upon which the magistrate could have had a substantial basis for concluding that probable cause existed to issue the warrant, including surveillance, an arrest for possession of drug paraphernalia, and Brinkley's alert.  *Cf. Duarte*, 389 S.W.3d at 351–52 (concluding that information from first-time informant looking for "a deal" on his own pending criminal charges, despite being described as "credible," failed to provide magistrate with a substantial basis for concluding that probable cause existed to issue search warrant).  In *Duarte*, in exchange for possible leniency on his pending criminal charges, the first-time informant told police that he had seen cocaine within the past twenty-four hours at Duarte's address, and the police merely confirmed Duarte's address before applying for the warrant, without any additional verifying information.  *Id.* at 352, 359.

conflicting evidence offered) that the dog's alert provides probable cause to search. . . .

. . . .

In short, a probable cause hearing focusing on a dog's alert should proceed much like any other. . . . The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.

*Florida v. Harris*, 133 S. Ct. 1050, 1057–58 (2013).[4]

Further, as pointed out by the trial court, while the length of time here stretched "the edges of the freshness element," given the totality of the circumstances, we cannot say that the trial court erred by denying the motion to suppress based on staleness. *See Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012) ("We have suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence."), *cert. denied*, 133 S. Ct 370 (2012); *Thiboult v. State*, No. 02-06-00449-CR, 2008 WL 45757, at *2 (Tex. App.—Fort Worth Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (noting that when the affidavit recites facts indicating activity of a

---

[4]We do not address the applicability of *Florida v. Jardines*, 133 S. Ct. 1409 (2013), if any, in which the Supreme Court, in a split decision, held that "the government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment," and in which police were investigating an unverified tip that marijuana was being grown at a residence. *Id.* at 1413, 1417–18.

protracted and continuous nature, such as a course of conduct, the passage of time between the occurrence of events set out in the affidavit and the time the search warrant was issued becomes less significant).   Bearing in mind the totality-of-the-circumstances test, and under the appropriate standard of review, we hold that probable cause existed to issue the search warrant in question and that the trial court did not err by denying Crowley's motion to suppress. Therefore, we overrule both of Crowley's issues.

## IV.  Conclusion

Having overruled both of Crowley's issues, we affirm the trial court's judgments.

PER CURIAM

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 18, 2013

12