

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00016-CR

JOSEY WALES PARKS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY
### TRIAL COURT NO. 1263051

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Crowley police officers detained Appellant Josey Wales Parks while they sought a search warrant for his home, where they subsequently discovered marijuana. Parks pleaded guilty to possession of marijuana, two ounces or less, in exchange for six months of deferred adjudication community supervision, a

---

[1]*See* Tex. R. App. P. 47.4.

fine, and court costs after the trial court denied his motion to suppress. Parks appeals the denial of his motion to suppress in two points pertaining to the search warrant affidavit and his detention. We affirm.

## II. Motion to Suppress

When the trial court determines probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.* Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 811; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

Further, we may not analyze the affidavit in a hyper-technical manner; rather, we must interpret the affidavit "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt,

we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id.* at 272. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012). As long as the magistrate had a substantial basis for concluding that probable cause existed, the magistrate's probable cause determination will be upheld. *McLain*, 337 S.W.3d at 271.

We have summarized the following pertinent information from Investigator Wallace's search warrant affidavit, which he signed on September 20, 2011:

- In the two months prior to the search warrant application on September 20, 2011, the Crowley Police Department received up to twenty reports of burglary and thefts in Parks's neighborhood.

- "On or about September 19, 2011, . . . Parks . . . did then and there commit the offense of Possession of Marijuana . . . in that he did then and there possess marijuana inside his residence . . . ."

- On September 19, 2011, Lachelle Henton advised Crowley Police Officer McCurtain that her juvenile son T.V. had been stealing property from residences in their neighborhood and trading the stolen property with Parks, who lived across the street from them, in exchange for marijuana.

- On September 19, 2011, Henton went to Parks's house to confront Parks about providing T.V. with marijuana. He admitted to her that he provided marijuana to T.V. in exchange for property, and she admonished Parks to stay away from her son and to stop providing him with marijuana.

- On September 20, 2011, Officer McCurtain told Investigator Wallace what Henton had told him about stolen property possibly being located at Parks's residence.

3

- On September 20, 2011, Officers McCurtain and Littlejohn went to Parks's residence and conducted a "knock and talk" with Parks. Parks told them about his friendship with T.V. but denied providing T.V. with marijuana or receiving any property from him.

- Officer McCurtain, who was previously employed as a narcotics interdiction officer and due to his training and experience had become familiar with the odor of fresh marijuana, and Officer Littlejohn reported that they detected the overwhelming odor of fresh marijuana coming from inside Parks's residence while they talked with Parks in the open doorway of his residence.

- Officer Littlejohn began surveillance of Parks's residence, saw an unidentified female enter the residence with a key, and saw Parks transport several boxes with unknown contents from a truck parked in the driveway into the residence. "It was determined at that point to detain . . . Parks and the female in the residence in order to protect any evidence from destruction."

- Officer Littlejohn approached Parks outside the residence, detained him, secured him in the back of his patrol unit, and gave him his *Miranda* warnings. Parks then waived his rights and agreed to answer questions.

- Officer Littlejohn knocked on the door, detained the female who answered it, and placed her in the back of Officer McCurtain's patrol unit. She waived her rights, agreed to answer questions, and told Officer McCurtain that she had an amount of marijuana in a green bag that was located just inside the residence by the doorway.

- Officer Harold Cussnick with the Fort Worth Police Department K-9 Unit was asked to come to the residence; his K-9 partner Kelev had a positive alert to the presence of narcotics at the residence's front door.

The face of the warrant reflects that the magistrate signed it at 11:33 a.m. on September 20, 2011.

At the suppression hearing, Officer Littlejohn testified that he and Officer McCurtain decided to conduct a "knock and talk" with Parks after receiving T.V.'s mother's credible tip regarding her son's crime spree and his exchanging the

stolen goods for marijuana with Parks, a neighbor across the street.[2]  They went

to Parks's home at some point in the morning between 8:00 a.m. and "before

lunch" and spoke with Parks for around five minutes.  Both officers detected a

strong odor of marijuana coming from inside the house when Parks opened the

front door.  Parks told them that he did not want to speak with them and that "he

knew the kid but, you know, he wasn't doing any of the buying" of the stolen

property.

After conversing with Parks, the officers returned to the police station and

talked with Investigator Wallace.  Officer Littlejohn said that Investigator Wallace

told them to return to Parks's house and make sure nobody left while he

procured a search warrant for the house.  After returning to Parks's house, the

officers saw Parks leave the house to ride his bike and walk his dog.  Officer

Littlejohn relayed this information to Investigator Wallace, who told him to detain

Parks.  Officer Littlejohn testified that he approached Parks, took Parks's cell

phone, and placed him in the back of his patrol car[3] and that Parks was detained

from concern that he might otherwise destroy the evidence.  While Parks was

detained, a Fort Worth K-9 unit arrived and alerted outside the home to the

---

[2]*See Florida v. Jardines*, 133 S. Ct. 1409, 1416 (2013) (stating that a police officer not armed with a warrant may approach a home and knock because that is no more than any private citizen might do).

[3]Officer Littlejohn further testified that he did not activate the lights on his patrol car and that he did not handcuff Parks before placing him in the patrol car.

presence of drugs.[4] Officer Littlejohn testified that Parks was detained for thirty minutes to an hour before the search warrant was executed and that police recovered a stolen Wii game console and a small amount of marijuana from Parks's residence.

Investigator Wallace testified that he had sent Officers Littlejohn and McCurtain back to the residence to prevent Parks from removing or destroying the evidence and that he asked for a K-9 unit to be sent out. Investigator Wallace said that he waited to hear the results from the K-9 unit before he started drafting the search warrant and that it usually took him thirty to forty-five minutes to "bang out a warrant like this."

On cross-examination, Investigator Wallace stated that the search warrant affidavit contained a typographical error in that the first statement in the affidavit recited that Parks had committed possession of marijuana on or about September 19, 2011. Investigator Wallace testified that he had intended for that date to read September 20, 2011,[5] and that he had based the affidavit on the September 20, 2011 events—the "knock and talk" at Parks's residence, the

_____

[4]*Cf. Jardines*, 133 S. Ct. at 1417–18 ("The government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment."). Parks does not argue that *Jardines* retroactively applies to the K-9's alert; he does not address the alert at all.

[5]Officer Littlejohn stated that he thought the police had arrested Parks for possession on September 19, but he also agreed that the conversation with T.V.'s mother had occurred on September 19 before the September 20 "knock and talk" and the arrest.

marijuana odor smelled by the officers, and the K-9 unit's alert. Investigator Wallace further testified that he arrived at the residence around noon to conduct the search.

The trial court recited into the record that the two references to September 19 in the affidavit were typographical errors;[6] that all of the events occurred on September 20, 2011; and that based on the smell of marijuana that the officer recognized based on his training and experience, there was sufficient probable cause to believe that there were potential controlled substances in the house. The trial court adopted the affidavit's factual recitation as the chronology of events that led to the search warrant and expressly stated that the detention did not lead to recovery of any evidence that was sought to be used against Parks. And it concluded that the search warrant led to the recovery of the evidence at issue and that the search warrant was valid on its face because, despite the typographical errors, it was supported by probable cause.

In his second point, Parks complains that the trial court erred by denying his motion to suppress because the affidavit failed to state what time Officer

---

[6]As set out above in our summary of the affidavit's contents, there were actually three references to September 19; only one of them—the allegation that Parks committed possession of marijuana "on or about September 19, 2011"— appears to be incorrect in light of the record. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

Littlejohn smelled the marijuana odor coming from his house, leaving the magistrate to guess whether drugs could still be found there.

The affidavit reflects that Henton, a named informant, spoke directly to Parks, who admitted to her that he had supplied her son with marijuana. *See Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (upholding the validity of a search warrant affidavit when it specified a named informant who supplied the information upon which probable cause was based and was sufficiently detailed to suggest direct knowledge on the informant's part). Further, Henton's information was corroborated by the fact that the officers then went to Parks's residence and smelled an "overwhelming odor of fresh marijuana" coming from inside the house. The affidavit also reveals that through his training and experience as a narcotics interdiction officer, Officer McCurtain was familiar with the odor of fresh marijuana. Finally, the affidavit indicates that a female inside the residence told the officers that there was marijuana inside Parks's residence.

The record reflects that the search warrant was issued and executed at 11:34 a.m. on September 20, 2011—the same day on which the officers detected the odor of fresh marijuana coming from inside Parks's residence. Further, the affidavit stated that the Crowley Police Department had received "up to twenty reports of burglary" in Parks's neighborhood during the previous two months. In conjunction with Henton's tip that her son had been stealing from his neighbors' homes and trading the stolen goods to Parks in exchange for marijuana, the

magistrate could have reasonably inferred that Parks had been engaging in continuous drug transactions during the two months leading up to the search of his residence. *See Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012) ("We have suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence."), *cert. denied*, 133 S. Ct. 370 (2012); *Thiboult v. State*, No. 02-06-00449-CR, 2008 WL 45757, at *2 (Tex. App.—Fort Worth Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (noting that when the affidavit recites facts indicating activity of a protracted and continuous nature such as a course of conduct, the passage of time between the occurrence of events set out in the affidavit and the time the search warrant was issued becomes less significant).

We defer to all reasonable inferences that the magistrate could have made, and here, the magistrate could have determined that the information was still sufficiently fresh to issue the search warrant without the specific time that the officers smelled the marijuana pinpointed in the affidavit. *See McLain*, 337 S.W.3d at 272; *cf. Crider v. State*, 352 S.W.3d 704, 708–11 (Tex. Crim. App. 2011) (requiring a specific time in a DWI search-warrant affidavit for blood evidence due to alcohol's dissipation from bloodstream). Therefore, we conclude that the magistrate had a substantial basis for determining that sufficient probable cause existed to issue the search warrant. *See Duarte*, 389 S.W.3d at 354–55; *McLain*, 337 S.W.3d at 271. We overrule Parks's second point.

9

In his first point, Parks argues that his detention was an arrest without probable cause that led to the search warrant's procurement. Parks sought suppression of all tangible evidence seized from his residence and any of his statements. The record reflects that his statements, if any, were not offered or admitted into evidence, and it supports the trial court's conclusion that the other evidence was recovered pursuant to the search warrant, which we have already concluded was properly supported by probable cause.[7] Therefore, even assuming that the seizure itself was unlawful, because there was no evidence resulting from the detention for the trial court to suppress, we overrule Parks's first point. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

### III. Conclusion

Having overruled both of Parks's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 18, 2014

---

[7]Parks does not explain how the detention could have led to the search warrant's procurement when, as set out above, the search warrant application was based primarily on the tip from T.V.'s mother, the fresh marijuana odor, and other circumstances that led to Parks's detention while the police pursued the warrant.