

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00131-CR
No. 02-24-00132-CR

———————————————

WILBUR DORSEY MARTINEZ JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court Nos. 1665138, 1670008

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Wilbur Dorsey Martinez Jr. challenges the denial of his motion to suppress evidence taken from an iPhone. The iPhone had been left near a burning car that police officers suspected had been used during a shooting hours earlier. A police detective applied for and received a search warrant for the phone. Martinez moved to suppress the evidence from the phone; after a hearing, the trial court denied the motion. In one issue, Martinez contends that the search warrant affidavit did not support a finding of probable cause, that he had standing to object to the phone's search, and that he had not abandoned the phone. Because we hold that the magistrate had probable cause to issue a search warrant, we will affirm.

## Background

The search warrant affidavit at issue, executed by Fort Worth Police Detective P.A. Vega, first discussed a shooting that had led to the police investigation and what the detective had observed at the scene of the shooting:

> On October 6, 2020, at approximately 8:16 pm[,] the Fort Worth Police Department was contacted in reference to a shooting call located at 5310 E. Rosedale Street (Smokey's Paradise Food Mart) in Fort Worth. . . .
>
> Officers arrived on scene at approximately 8:21 pm and located a ma[n] inside the store who was reported to have been shot[ and who] was later pronounced deceased by medical personnel. . . .
>
> The homicide unit was notified and your affiant, Detective P.A. Vega . . . made the scene of the shooting. I spoke with officers who told me the shooting was captured on a Fort Worth City Camera[ ] and that a

white Chevrolet 4 door vehicle was involved. While on scene, I observed the following:

- 7 fired rifle casings in the parking lot of the location

- A trail of blood leading from the parking lot into Smokey's store[ ]

- Cameras on the outside of Smokey's

- I contacted the FWPD Digital Forensics Unit and requested they make the location to retrieve any video footage that captured the shooting.

The affidavit then described video footage that the detective had reviewed. The footage showed a white vehicle arriving at the mart, shots being fired at a person from that white vehicle, and the white vehicle's subsequently leaving the crime location:

I later reviewed footage from the Fort Worth City Camera system and Smokey's Store. I observed the following:

- The victim pulled up in . . . his Dodge pickup truck and parked in the Smokey's lot

- A white Chevrolet, which is visually similar to a Malibu, is seen idling at the east exit of the parking lot

- The victim then exits the truck and begins walking to the store

- The white Chevrolet then backs away from the exit and drives west through the parking lot toward the victim

- A rifle is then seen hanging out of the back driver side window, and several shots are fired at the victim

- The victim falls and then runs into the store

- The white Chevrolet then flees east on Rosedale [S]treet

3

- The white Chevrolet appears to be a Malibu with paper plates, dark tint, and an empty black front license plate bracket

- The shooting happened at approximately 8:14 pm[.]

The affidavit next discussed the discovery in the middle of the night of an on-fire white Chevrolet Malibu and the detective's finding the phone on the ground near that burning car:

> On October 7, 2020, at approximately 3:24 am, the Fort Worth Police and Fire departments received a call that a vehicle was on fire at 5801 Baylor Street in Fort Worth, Tarrant County, Texas. After the fire was extinguished, the vehicle was identified as a white Malibu . . . . FWPD Crime Scene Officer R. Hill . . . photograph[ed] and process[ed] the scene. Through his search of the area, he located cash and a black Apple [i]Phone with IMEI #354911097426464 near the vehicle. It appears as though someone dropped the items as they were fleeing the area. The area where the vehicle was located appeared to be secluded and dark. I reviewed photographs taken by Officer Hill[,] and the vehicle appears visually similar to the suspect vehicle I observed in the video from Smokey's.

The location of the burning car was about 3 miles from Smokey's.

Finally, the affidavit set out the detective's reasoning for believing that the iPhone would contain information relevant to the investigation:

> On October 7, 2020, I took possession of the cell phone, and it appeared to be functioning. Through my training and experience working homicides and robberies, I know in cases with multiple suspects they often communicate through electronic means. I also know based on video evidence that there were at least two suspects involved in this shooting (Driver & back seat passenger). I know that cell phones may contain information that includes but [is] not limited to GPS information, call/text information, contact information, and other information that may constitute evidence in this case. I also know that cell phones are typically used to interface with social media applications like Instagram, and they are utilized to upload photos/videos to the

4

social media site. Further, the . . . [i]Phone . . . will help identify the owner of the phone and who the suspect(s) were in communication with during the murder. Further, GPS information could provide information where suspects reside or provide the location of other disposed evidence. It is believed that the evidence listed in this warrant is relevant to the homicide investigation and may be found within the contents of the cellphone.

The electronic data, specifically, videos, photographs, [and] text messages, requested in this warrant will establish the identity of the owner, phone numbers associated to the phones, locations, information that will assist in creating a timeline for this offense and any communications with the victim, and/or co-conspirators, and/or travel arrangements made by suspect(s) in order to facilitate said Murder as well as to escape from the resulting law enforcement pursuit[.]

Based on these allegations, the detective requested and received a warrant to search the iPhone. Martinez was subsequently charged with murder, arson, and tampering with evidence.

Martinez filed a motion to suppress all physical and documentary evidence, including any cell phone evidence and any testimony by law enforcement officers about finding of evidence. Martinez alleged that the search warrant and affidavit failed to state adequate probable cause for the search requested and did not state with sufficient particularity that the items to be searched for and seized under the warrant had any relevance to the offense being investigated. Martinez further asserted that he had not consented to the search.

At the hearing on Martinez's motion, he argued that "the probable cause contained in th[e] search warrant affidavit [was] insufficient to enable a magistrate to come up with probable cause." He complained that (1) the affidavit did not indicate

5

how far from the car the phone had been found, and crime scene photos did not show the distance from phone to car, and (2) the affidavit contained only boilerplate language about how cell phones are commonly used by criminals rather than any specific facts about how the phone had been involved in the crime in this case. As evidence to support his motion, Martinez introduced the warrant and affidavit, a map showing the distance between Smokey's and the burning car's location, and crime scene photos taken by the police. The photos included one showing the burned-out car with orange cones by it; the car is on what appears to be a two-lane undivided road, with the car in one lane and the cones by and behind the rear of the vehicle approximately where the other travel lane would be. Other photos included one showing just the orange cones, one with a five-dollar bill next to a cone, one with a different five-dollar bill next to a cone, and one with a cell phone and yet another five-dollar bill next to a cone.

Martinez also raised the issue of standing. He anticipated that "the [S]tate would argue that this is abandoned property because it was left at the scene of this burned[-]out car," but he argued that the facts in the affidavit were not enough to show abandonment. Martinez further asserted that he had an expectation of privacy in the phone. He did not introduce any evidence showing his ownership of the phone, but his attorney stated at the hearing, "That is his phone."

In response to these arguments, the prosecutor first took issue with Martinez's "almost trying to insinuate that" the detective had made an inaccurate statement in

6

describing the phone as being "near" the burning car. Then, as anticipated, the prosecutor argued that the phone had been abandoned. He asserted that the car had been "torched"—and Martinez had been additionally charged with arson—that the phone and some cash were found "nearby," and that "it appears as though someone fleeing from the scene of this arson dropped this property." The prosecutor continued, "So at that point, taking aside any legal calculation or legal explanation, police officers have an obligation to look at that phone and try to figure out who it belonged to," whether victim or perpetrator of the arson. The prosecutor then argued that the affidavit contained sufficient allegations to "give the magistrate probable cause to say a cell phone was probably used."

The trial court denied the motion to suppress. Martinez and the State then entered into a plea bargain under which the State waived the tampering charge and recommended 28 years' confinement each for the murder and arson charges, to run concurrently. In accordance with that plea bargain, the trial court found Martinez guilty and sentenced him to 28 years' confinement. The trial court certified Martinez's right to appeal.

## Discussion

Martinez argues in his sole issue that the trial court erred when it denied his motion to suppress because the affidavit supporting the search warrant failed to include facts sufficient to establish probable cause that the iPhone contained evidence of a murder. He complains that the affidavit did not provide any identifying

information about the burning car or explain whether the car's location was near the shooting scene so as to connect it to the car used in the shooting and that the affidavit's description of the iPhone as being "near" the burning car was insufficient to connect the phone to the car. He further argues that the abandonment doctrine does not apply in this case because there is no affirmative evidence that he intended to abandon his property.

In response, the State argues that the search warrant affidavit contained sufficient facts to allow the magistrate to reasonably infer that that the iPhone likely contained evidence of the shooting described in the affidavit. The State further argues that Martinez failed to show that he had a subjective expectation of privacy because he did not prove he had any proprietary or possessory interest in the iPhone and that if Martinez established a subjective expectation of privacy, he did not establish that the expectation was objectively reasonable. Finally, the State argues that if the affidavit was insufficient to establish probable cause, exclusion was not an appropriate remedy because there was no police misconduct alleged or proven.

## I. Standard for Reviewing Magistrate's Probable Cause Determination

"[A] magistrate may not issue a search warrant without first finding 'probable cause' that a particular item will be found at a particular location." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of

8

a crime will be found at the specified location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

When reviewing a magistrate's determination of probable cause to issue a search warrant, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates. Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004) (citing 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983)). Under that standard, we uphold the probable-cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 810; *see also McLain*, 337 S.W.3d at 271–72; *Flores*, 319 S.W.3d at 702.

The probable cause standard is "flexible and non-demanding," and our review is "highly deferential because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *McLain*, 337 S.W.3d at 271, 272. In making a probable-cause determination, the magistrate is constrained by the four corners of the search warrant affidavit. *Id.* at 271; *Staley v. State*, No. 02-23-00053-CR, 2025 WL 727842, at *7 (Tex. App.—Fort Worth Mar. 6, 2025, pet. filed). The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from it. *Flores*, 319 S.W.3d at 702. The standard "'does not mean the reviewing court should be a

9

rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Id.* (quoting W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) (4th ed. 2004 & Supp. 2009–2010)).

On the other hand, a magistrate may not rely "on mere 'boilerplate' affidavit language—for example, incorrectly finding probable cause to seize and search an accused's cellphone based on an affiant's generic, barebones recitation that criminals are known to use cellphones." *Staley*, 2025 WL 727842, at *7 (citing *State v. Baldwin*, 664 S.W.3d 122, 134 (Tex. Crim. App. 2022)). Any boilerplate language "'must be coupled with other facts and reasonable inferences that establish a nexus between the device and the offense.'" *Id.* (quoting *Baldwin*, 664 S.W.3d at 123). To satisfy that requirement, "the affidavit may indicate . . . that the device likely contains some evidence useful in investigating the crime," and the affiant need not assert that a device was used during or immediately before or after the crime's commission. *Id.* (citing *Stocker v. State*, 693 S.W.3d 385, 388 (Tex. Crim. App. 2024)).

## II. Analysis

Here, the facts alleged were that a shooting occurred at 5310 E. Rosedale Street at 8:16 p.m., and the shooter was riding in a white car that appeared to be a Chevrolet Malibu. Approximately seven hours later, a white Chevrolet Malibu was found on fire in a dark and secluded area on Baylor Street. Near the car, officers found cash and the iPhone, both of which appeared to have been dropped.

The magistrate could reasonably infer from the phone's location near a burning car in a dark, secluded area that its owner had been either a participant in the car's burning or had witnessed it. The affidavit asserted that electronic data on the phone, including videos and text messages, could establish the identity of the owner. *Cf. Wells v. State*, No. PD-0669-23, 2025 WL 980996, at *8 n.14 (Tex. Crim. App. Apr. 2, 2025) (stating that in the circumstances of that case, "mere *possession* of the cell phone at the time and location of the offense may well be enough—never mind what is contained *in* the cell phone—to constitute evidence of the identity of the perpetrator of, or witnesses to, the offense"). Although it was possible that the iPhone did not belong to a suspect or witness, "'probable cause is about "fair probabilities," not near certainties.'" *Id.* at *4. The phone's owner's presence at the scene connected the owner to the arson, and the affidavit asserted that the phone could contain information that would help it identify that owner. *See Diaz v. State*, 604 S.W.3d 595, 604 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 632 S.W.3d 889 (Tex. Crim. App. 2021). The magistrate had sufficient facts from which it could determine that there was a substantial basis for concluding that searching the phone would uncover evidence related to the arson.

Further, because people do not usually deliberately set their cars on fire, and considering the timing of the burning car's discovery (in the middle of the night about seven hours after the shooting), its location (in a dark, secluded area approximately

three miles from the shooting location),[1] and the fact that the car was a Chevrolet Malibu (the same kind of car in which the shooter had appeared to be riding), the arson gave rise to a reasonable inference that the purpose of the fire was to destroy evidence related to the shooting. This inference was bolstered by the fact that cash was also found on the ground, suggesting that after the phone and cash had been dropped, their owner had fled the scene in such a hurry that he or she either did not notice that the items had been dropped or deemed retrieving them to be too much of a risk. The iPhone's presence at the arson scene thus connected the phone's owner to not only the arson, but also to the shooting. Further, the magistrate could reasonably draw an inference that, if the car had been set on fire to conceal evidence of the shooting, the culprit or culprits would have attempted to destroy other evidence. The affidavit stated that not only could information on the phone identify the phone's owner, but also that "GPS information could provide information [regarding] where suspects reside or provide the location of other disposed evidence" and that electronic data on the phone could establish the locations and information "that will assist in creating a timeline for this offense," as well as "travel arrangements made by

---

[1]The magistrate could take judicial notice of the distance between the location of the shooting and the location of the burning car. *See Donosky v. State*, No. 02-16-00399-CR, 2017 WL 4819379, at *1 n.2 (Tex. App.—Fort Worth Oct. 26, 2017, no pet.) (mem. op., not designated for publication) (citing Texas Rule of Evidence 201 and taking judicial notice of the distance between two addresses)).

12

suspect(s) in order to facilitate said Murder as well as to escape from the resulting law enforcement pursuit."

This is not a case in which the police developed a suspect and asked for a search warrant for the suspect's phone based on nothing more than a generic assertion that criminals often use phones in communicating with each other or in planning crimes. *See McDonald v. State*, 676 S.W.3d 204, 211 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (noting that the search warrant affidavit in that case "did more than simply assert boilerplate language concerning how criminals use cell phones"). *Contra State v. Baldwin*, 614 S.W.3d 411, 416 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 664 S.W.3d 122 (Tex. Crim. App. 2022) (noting that the warrant application "yields no nexus between Baldwin's vehicle and the vehicle at the scene of the offense"). The affidavit provides the location of both the shooting and the arson as well as the length of time between the shooting and the discovery of the car, and it describes the shooter's vehicle and its similarity to the burned-out car found approximately seven hours later. From the statements in the affidavit, the magistrate could make the reasonable inference that the two crimes were linked and that evidence on the iPhone could reveal information relevant to both crimes. Given the particular circumstances of this case, the affidavit sufficiently alleged facts showing that a search of the phone was likely to produce evidence in the investigation of the criminal activity described in the affidavit. *See Stockere*, 693 S.W.3d at 388.

Martinez, however, takes issue with the affidavit's description of the iPhone as being "near" the burned car. He argues that "[d]escribing something as being 'near' another object provides no useful information," just as "stating that Fort Worth is 'near' Dallas provides no discernable information, as both 'near' and 'far' could be correct . . . . at the same time depending on the scale used." He contends that "[i]t goes without saying that were the [phone] located one hundred yards away from the burned-out Malibu, it would be extremely difficult to show that it was related to the murder [that] had occurred" and that "[b]ecause the affidavit failed to describe how near, or how far, or where exactly, the iPhone was located, it fail[ed] to establish any kind of relationship to the burned car."

We agree that what the word "near" conveys in any given situation depends on the context. But the magistrate could reasonably infer from the context of the affidavit that "near" meant close enough to the car to suggest a connection to the car, *cf. State v. Duforat*, No. 08-22-00049-CR, 2023 WL 1420729, at *4 (Tex. App.—El Paso Jan. 31, 2023, no pet.) (not designated for publication) (noting that a car can stop "near" a stop line "by stopping seemingly anywhere close to the line"), and nothing in the affidavit suggested that the "near" description was untrue.

Under the facts set out in the search warrant affidavit and the reasonable inferences that the magistrate could draw from those facts, the magistrate could have had a substantial basis for concluding that a search of the phone would uncover evidence related to the criminal activity described in the affidavit. *See Gates*, 462 U.S. at

236, 103 S. Ct. at 2331; *see also McLain*, 337 S.W.3d at 271–72. Given this holding, we need not address Martinez's other arguments. *See* Tex. R. App. P. 47.1. We overrule Martinez's sole issue.

## Conclusion

Having overruled Martinez's sole issue on appeal, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 12, 2025

15